JOHN W. LAVERY & others *vs.* JOHN J. EGAN.

Suffolk.   Nov. 12, 1886. — Jan. 10, 1887.   HOLMES & GARDNER, JJ.,
                              absent.

A testator·by his will gave to his grandchildren named, the survivors or survivor
   of them, the use and improvement of all the residue of his estate during their
   lives, in equal shares; "and, when they shall respectively decease, to their
   respective heirs, executors, administrators, and assigns." *Held,* that the grand-
   children took, as tenants in common, life estates in the real property of the
   testator, with contingent remainders to their heirs.

A testator by his will gave to his four grandchildren, the survivors or survivor of
   them, the use and improvement of all the residue of his estate during their
   lives, in equal shares; "and, when they shall respectively decease, to their
   respective heirs, executors, administrators, and assigns." The four grand-
   children survived the testator, and one of them, a woman, married and had
   issue born alive, who died before her. She died intestate, leaving a husband
   and the other three grandchildren of the testator surviving her; and she left no
   property other than her one-fourth interest in the testator's real estate, which
   interest was less than $5000 in value. *Held,* that, under the Pub. Sts. *c.* 124, § 1,
   her husband took her one-fourth interest.

WRIT OF ENTRY to recover a parcel of land in Boston.   Plea,
*nul disseisin,* with a disclaimer of title to three undivided fourth
parts of the demanded premises.   The case was submitted to the
Superior Court, and, after judgment for the demandants, to this
court, on appeal, upon agreed facts, in substance as follows :

Ann Lavery, of Boston, died testate on August 19, 1867.
Her will, dated August 14, 1867, was duly proved and allowed
in the Probate Court on September 30, 1867 ; and the seventh
clause of it was as follows : " I give, devise, and bequeath to
my said four grandchildren, Susan M. Lavery, John W. Lavery,
Francis J. Lavery, and Alphonsus L. Lavery, the survivors or
survivor of them, the use, income, and improvement of all the
rest and residue of my estate and property, whether real, per-
sonal, or mixed, of which I shall die seised or possessed, for
and during their respective lives, in equal shares ; and when they
shall respectively decease, to their respective heirs, executors,
administrators, and assigns, forever."

She left surviving at the time of her death, as her next of kin
and only heirs, four grandchildren, named respectively Susan
M., John W., Francis J., and Alphonsus L. Lavery, who are the

persons named in the seventh clause of the will, said grandchildren being the children of Francis Lavery and Elizabeth Lavery. Francis was the son of Ann Lavery, and died on June 9, 1860, and Elizabeth, his wife, died on April 11, 1870.

Patrick Phillips qualified and acted as executor of the will of Ann Lavery, and filed his final account, which was duly allowed, on November 4, 1878, and the real estate of the deceased, being the same premises described in the writ, was not required for the payment of her debts and legacies.

Susan M. Lavery, one of the grandchildren above named, married John J. Egan, the tenant in this action, on or about May 27, 1880, and there were born of that marriage two children, who died in infancy prior to the decease of their mother, and she died intestate, without issue surviving her, on December 1, 1884, leaving no estate other than as aforesaid, and no debts outstanding; and leaving, as the surviving grandchildren of Ann Lavery, John W., Francis J., and Alphonsus L. Lavery, who are the demandants in this action.

No conveyance of the whole or of any part of the premises described in the writ has been made to the tenant, who is in possession of, and claims title to, one undivided fourth part of the premises described in the writ, as the surviving husband of Susan M. Lavery, and the father of her children. The value of the one-fourth interest claimed by the tenant is less than $5000.

*S. H. Tyng*, for the tenant.

*T. S. Dame & J. F. Cronan*, for the demandants.

FIELD, J.    By the seventh clause of the will, as we construe it, the four grandchildren took, as tenants in common, life estates in the real property of the testatrix, with contingent remainders to their heirs. Pub. Sts. *c.* 126, §§ 4, 5. Gen. Sts. *c.* 89, §§ 12, 13. *Putnam* v. *Gleason*, 99 Mass. 454. On the decease of Susan M. Lavery, one undivided quarter of the real property vested by the will in the persons who were then her heirs. These heirs do not take by descent from Susan, but under the will, as the persons designated to take on the termination of her life estate, and the remainder is contingent, because, until her death, it cannot be determined who her heirs will be. The words of the will "to their respective heirs, executors, administrators, and assigns" are to be construed as if they read "to their respective heirs and

their executors, administrators, and assigns," and the words "executors, administrators, and assigns" were probably added to make it certain that the heirs took a fee in the real estate, and took the personal property absolutely. The same conclusion is reached if these words are disregarded. Without them, the intent is clear that the grandchildren should take only a life estate, and that, on their decease, respectively, the property should go to their heirs; and this intent is not to be defeated by the addition of formal words like these, when, in the connection in which they are used, their significance is uncertain.

Susan M. Lavery died on December 1, 1884, leaving no issue, nor father or mother, but leaving a husband, who is the tenant in this action, and leaving three brothers, who are the demandants. These demandants are the remaining grandchildren of the testatrix, named in the seventh clause of the will. By the will they took a life estate in three quarters of the land demanded, and, if they are the sole heirs of Susan, they took on her death an estate in fee simple in the remaining quarter. This quarter is of less value than $5000. Susan left no estate; and the contention of the tenant is, that, under the St. of 1880, *c.* 211, § 1, (Pub. Sts. *c.* 124, § 1,) he would have taken, as heir of Susan, an estate in fee in this one quarter if Susan had died seised of it and intestate, and that on her death he took the same estate under the will, as he was the only person who could be called her heir to this property.

The word "heir" of itself imports succession to property *ab intestato.* Blackstone's definition is this: "An heir, therefore, is he upon whom the law casts the estate immediately on the death of the ancestor." 2 Bl. Com. 201. But, in defending the ancient rule that the inheritance shall never ascend, he says: "We are to reflect, in the first place, that all rules of succession to estates are creatures of the civil polity, and *juris positivi* only." 2 Bl. Com. 211. After the rule was adopted that inheritances might ascend, the ancestor was the person from whom the inheritance devolved upon the heir, and a child might be the ancestor of his parent. The earliest rules for the descent of real property upon the death of the owner of an inheritable estate were established by the customary law; but the common law has been largely changed in England by statute, and in this

Commonwealth the descent of real estates held in fee simple has, from very early times, been regulated by statute. It is the law, whether customary or statutory, which determines who shall inherit real property when the owner dies intestate, and the law alone decides whether the word " heirs " shall include relatives or connections by affinity as well as relatives by consanguinity. An heir, therefore, is he upon whom the law casts an estate of inheritance immediately on the death of the owner. Dower and an estate by the curtesy were initiate during the life, and became consummate on the death of the husband or wife who was the owner of an estate of inheritance ; and these estates could not be defeated by the alienation or by the will of the owner of the inheritance, and could not be taken for the payment of his debts, and the wife or the husband did not take as heirs, but as purchasers. But by the St. of 1880, c. 211, § 1, if " any person shall die intestate, without leaving issue living, and shall leave a husband or wife surviving, such husband or wife shall take in fee the real estate of such deceased to an amount not exceeding five thousand dollars in value." This, by § 2, may be set off by metes and bounds, as partition of land is made, or may be assigned as an undivided portion. Under this statute, the husband or wife takes only if the deceased die intestate seised of the estate, and they take in fee. They take also subject to the liability of having the land sold to pay the debts of the deceased and the expenses of administration. If there was ever any doubt about this, the doubt was removed by the St. of 1881, c. 112, § 1, which amended the St. of 1880, c. 211, § 1, by inserting after the word " deceased " the words " remaining after the payment of the debts of the deceased." See Pub. Sts. c. 134, § 2. In all essential respects, the husband or wife takes an estate in fee under the St. of 1880, c. 211, § 1, precisely as an heir takes; and we think they are to be considered as statutory heirs.

Although in the case at bar the heirs of Susan do not take from her by inheritance, but take as persons designated by the will, yet we know of no way of determining the persons intended by the will, except by ascertaining the persons who by law would have inherited the estate from her if she had died seised of it and intestate. If, in determining who are heirs, we should depart from our statutes and go back to the common law, or to

the customary law of the county of Kent in gavelkind tenures, we might be required to recognize rules of descent for estates in fee simple which have not been in force in the territory of this Commonwealth since the passage of the Prov. St. of 1692–3 (5 W. & M.) *c.* 14, 1 Prov. Laws (State ed.) 43. See Anc. Chart. 203. In cases where the word " heirs " in a deed or will has been construed to mean distributees of personal property under the statute of distributions, and that statute has given the whole or a part of the personal property of a deceased husband or wife to the wife or the husband, they have taken the property in the same manner as under the statute. *Houghton* v. *Kendall,* 7 Allen, 72. *Sweet* v. *Dutton,* 109 Mass. 589. *Minot* v. *Harris,* 132 Mass. 528. *In re Steevens' trusts,* L. R. 15 Eq. 110. *Jacobs* v. *Jacobs,* 16 Beav. 557. *Doody* v. *Higgins,* 2 K. & J. 729. *Wingfield* v. *Wingfield,* 9 Ch. D. 658, 666. By the English courts, the husband is excluded from, while the wife is included among, the distributees of personal estate, because it is held that a husband does not take the personal estate of a deceased wife by virtue of the statute of distributions. In the case at bar, the husband takes the estate under the statute, and not by virtue of any marital rights at common law. *Milne* v. *Gilbart,* 2 DeG., M. & G. 715 ; 5 DeG., M. & G. 510.

In many of the cases in which it has been decided that the husband is not heir to the wife, or the wife to the husband, there has been no statute which has given to either any such estate in the real property left by the other as that given by the St. of 1880, *c.* 211, § 1 ; Pub. Sts. *c.* 124, § 1.

The judgment is reversed, and, as the case is submitted upon agreed facts, judgment may be entered without regard to the form of the pleadings. Judgment should be entered for the demandants for three undivided fourth parts of the land demanded, and for the tenant for one undivided fourth part, and for his costs accruing since he filed the plea under which he disclaimed title to three undivided fourth parts. *Cole* v. *Eastham,* 124 Mass. 307. Pub. Sts. *c.* 173, § 9. *So ordered.*