CHARLES S. LINCOLN *vs.* BENJAMIN F. PERRY & others.

Suffolk.   November 23, 1888. — June 19, 1889.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Will* — *Devise of Life Estate* — "*Heirs at Law*" — *Husband as Heir of Wife* — *Extrinsic Evidence.*

A testator, who was born and lived awhile in another State, but was domiciled here when he executed his will, and thenceforth until he died in 1877, gave one fourth part of the residue of his estate, consisting of personalty here and of land in that State, to his brother's wife, who was domiciled there with her husband, and there died in 1884, "to have and to hold the same to her during her life, and at her decease to her heirs at law and their heirs and assigns forever." A trustee was appointed here and in such other State, who duly sold the land and held the proceeds. *Held*, but only as to the personalty which remained at her death, that it should go to her heirs at law as determined by the statutes of distribution in force here at her decease, and that her husband must be considered as her heir.

Evidence of a counsellor at law, under whose advice the will was drawn, that the testator did not wish to have his brother receive anything under the gift to his brother's wife and her heirs at law, was *held* to be incompetent.

BILL IN EQUITY, filed April 13, 1886, by the trustee under the will of George W. Perry, against the husband and the blood relatives and heirs at law of Judith E. Perry, for instructions as to the disposition of the remainder of a gift to her for life.   The case was heard by *W. Allen,* J., who reported it for the consideration of the full court, in substance as follows.

George W. Perry, of Malden in this Commonwealth, died on April 24, 1877, leaving a will, which was duly admitted to probate on May 26, 1877, and was, with the exception of parts merely formal, as follows:

"First.   Unto my wife, Martha Jane Perry, my homestead estate where I now reside, situated on Florence Street in said Malden, to have and to hold the same to her and her heirs and assigns forever ; also unto my said wife all my household furniture and utensils, including all the chattels in my dwelling-house ; also unto my said wife the sum of fifteen hundred dollars per annum, during her life.   It is my will that the foregoing gifts to my wife shall be in full of all her interest in my estate and

in lieu and bar of dower. It is also my will that if any of the above named property should remain undisposed of by my wife at her decease, the same shall descend and belong to my heirs at law.

" Second. Unto my mother, Abigail Perry, the sum of six hundred dollars per annum, during her life.

" Third. Unto my sister, Eliza Bates, my lot of land and the buildings thereon situated in Keene in the county of Cheshire and State of New Hampshire, to have and to hold the same to her and her heirs and assigns forever.

" Fourth. Unto Judith Perry, the wife of my brother, Benjamin F. Perry, the sum of five hundred dollars.

" Fifth. All the remainder and residue of my estate, real, personal, and mixed, of which I may die seised or possessed, or to which I may be entitled at the time of my decease, shall be divided into four equal parts, which I give, devise, and bequeath as follows, to wit : one of said parts to my brother, Benjamin F. Perry, to have and to hold the same to him during his life, and at his decease to his heirs at law and their heirs and assigns forever ; another of said parts unto Judith Perry, the wife of said Benjamin F. Perry, to have and to hold the same to her during her life, and at her decease to her heirs at law and their heirs and assigns forever ; the remaining two parts to my niece, Sarah Jane Harvey, to have and to hold the same to her during her life, and at her decease to her heirs at law and their heirs and assigns forever.

" Sixth. I nominate and appoint my wife, Martha Jane Perry, to be the executrix of this my last will and testament, and I direct that she shall not be required to furnish any sureties on her probate bond."

The only question was who were entitled to that portion of the estate given for life to Judith Perry, under the fifth clause of the will.

The testator was domiciled in Malden when the will was executed, and thenceforth until he died. He was born in Keene, New Hampshire, where he resided in his youth, and where his mother, Abigail Perry, and his sister, Eliza Bates, resided at the time of the execution of the will, and in which place the testator at the time of the execution of the will owned two

pieces of real estate, which he retained and owned at his death, one of which he devised to his sister Eliza, and the other fell into the residue of his estate. Abigail Perry died before the testator, at Troy, where she had lived for several years in the family of Benjamin F. and his wife, Judith E. Perry, who was the person called Judith Perry in the will. On December 23, 1879, the plaintiff was duly appointed trustee under the will to administer the trusts created thereby other than those relating to the real estate in New Hampshire, which trusts related to personal property, amounting to about $35,000.

In 1881 the plaintiff was also duly appointed trustee under the will in New Hampshire, and upon due proceedings had sold the real estate there situated, which consisted of a wood lot, and could not advantageously be divided, and held the proceeds, amounting to about $3,000, in his hands undisposed of.

No part of the personal property in this Commonwealth has ever been invested in real estate; and ever since the sale of the real estate in New Hampshire the whole property of the gift under the fifth clause of the will has been personal property.

During the life of the testator's widow, the plaintiff as such trustee duly paid to her from the income of the property not devised absolutely the sum of $1500 per annum, paying the remainder as provided in the will; and after the death of the widow the entire income of such property to those entitled to it under the will, including Judith E. Perry so long as she lived.

Judith E. died at Troy, in the State of New Hampshire, on January 24, 1884, where she and her husband had been domiciled and lived together as husband and wife for over thirty years immediately preceding her death.

Judith E., who never had a child, left surviving her Benjamin F., her husband, a brother and a sister, and the issue of deceased brothers and of a sister. She also left a will, which was duly admitted to probate, by which she gave all her property, consisting only of personalty, to her husband, the provisions of which will he did not waive.

Benjamin F. Perry, who died after the filing of the bill, never had a child, and his heirs at law, who were made parties defendant, consisted of brothers, sisters, a nephew, and a niece.

William S. Stearns, counsellor at law of forty years' practice

in the courts of this Commonwealth, called by the blood relatives
of Judith E., testified, under objection, that the testator was his
client, and that the will was drawn up by him or under his direc-
tion, after a consultation with the testator as to what persons
he desired should take or have the remainder of the property of
which Judith E. had the life interest; that the testator told him,
at the time of the execution of the will, that he wished such
remainder to go to Judith's blood relatives, and not to her hus-
band; that the witness then instructed the testator that the
term "heirs at law," as applied to Judith E. in the fifth clause,
would give such remainder to her blood relatives in distinction
from her husband, and that he wrote the term "heirs at law"
in such clause to carry out the intention of the testator that it
should go to her blood relatives. The judge found the facts to
be in accordance with such testimony, and reserved the ques-
tion of the competency of the testimony, or any part of it, for
the full court.

The General Statutes of New Hampshire of 1878, c. 193, § 5,
c. 202, § 16, and c. 203, §§ 1, 6, and the cases decided by the
Supreme Court of that State, of *Richardson* v. *Martin*, 55 N. H.
45, and *Wilkins* v. *Ordway*, 59 N. H. 378, were introduced in
evidence.

The case was argued at the bar in November, 1888, and
afterwards was submitted on the briefs to all the judges.

*E. G. McInnes*, for the plaintiff, read the papers in the case.

*H. G. Parker*, for the heirs at law of Benjamin F. Perry.

*J. B. Richardson*, for the blood relatives of Judith E. Perry.
In a gift of real and personal estate made by the same words,
one construction only will be given to it; and in such a gift that
construction will be given which is the proper one to give in
respect to the gift of real estate. *Clarke* v. *Cordis*, 4 Allen, 466.
*Lombard* v. *Boyden*, 5 Allen, 255. *Fabens* v. *Fabens*, 141 Mass.
400. *Gwynne* v. *Muddock*, 14 Ves. 488. In such a gift of real
and personal estate to "heirs at law," that term means relatives
by blood. *Clarke* v. *Cordis*, 4 Allen, 466, 480. *Putnam* v. *Glea-
son*, 99 Mass. 454. *Merrill* v. *Preston*, 135 Mass. 451. *Fabens*
v. *Fabens*, 141 Mass. 395. *Cummings* v. *Cummings*, 146 Mass.
501, 507. *Smith* v. *Butcher*, 10 Ch. D. 113. The case at bar is
not a case of substitution, like *Vaux* v. *Henderson*, 1 Jac. & W.

388, or *Doody* v. *Higgins*, 9 Hare, App. xxxii., or *Keay* v. *Boulton*, 25 Ch. D. 212; nor is it controlled by *Lavery* v. *Egan*, 143 Mass. 389, or by *White* v. *Stanfield*, 146 Mass. 424. By the Pub. Sts. c. 124, § 1, it is only where the wife dies, having had issue which has died before her, that the husband takes her real estate to the amount of five thousand dollars; which was the case in *Lavery* v. *Egan*. In *White* v. *Stanfield* the property was all personal. The testimony of Mr. Stearns was competent for the purpose of proving the fact that he was consulted by the testator, and that the testator was instructed as to the meaning of the term "heirs at law."

C. ALLEN, J. The material portions of the residuary clause of the testator's will are as follows: "All the remainder and residue of my estate, real, personal, and mixed, of which I may die seised or possessed, or to which I may be entitled at the time of my decease, shall be divided into four equal parts, which I give, devise, and bequeath as follows, to wit: one of said parts to my brother, Benjamin F. Perry, to have and to hold the same to him during his life and at his decease to his heirs at law and their heirs and assigns forever; another of said parts unto Judith Perry, the wife of said Benjamin F. Perry, to have and to hold the same to her during her life, and at her decease to her heirs at law and their heirs and assigns forever." The testator's birthplace was in Keene, New Hampshire, where he resided in his youth, and where at the time of the execution of his will he owned two pieces of real estate, which he retained and owned at his death; but he was domiciled in Malden, Massachusetts, when his will was executed, and thenceforth until he died. The testator died on April 24, 1877, and his will was dated October 10, 1874. Judith Perry died at Troy, New Hampshire, on January 24, 1884, where for over thirty years immediately preceding her death she and her husband, Benjamin F. Perry, were domiciled, and lived together as husband and wife. The property given by the residuary clause consisted of personal property only in this State, and a piece of land in said Keene, which the testator owned at the time of the execution of the will, and ever after until his death. Upon these and the other facts reported, the question is, Upon the death of Judith Perry, who became entitled to the fourth part

of the property given in the residuary clause, which she enjoyed the benefit of during her life? In other words, Who are to be deemed her heirs at law, within the meaning of the will?

These questions, so far as we are called upon to deal with them, relate only to the disposition which the trustee is to make of the personal estate given by the residuary devise. There was no real estate in Massachusetts which was included in the residuary devise. The plaintiff, having been appointed trustee in New Hampshire for the purpose of selling the land there situated, and having made sale of it accordingly, will account for his disposition of the proceeds of such sale in the courts of that State.

A majority of the court has arrived at the following conclusions in reference to the disposition of the personal property over which we have jurisdiction.

1. The testator has appointed a common destination for all of said fourth part of the residue of his property, whether the same is real or personal. The words should not be construed to mean that the real estate should go to one set of persons, and the personal estate to another; but the whole residue must go to the heirs, according to the meaning which that word bears at common law, namely, those who would be entitled to succeed to real estate in case of intestacy. *Fabens* v. *Fabens,* 141 Mass. 395, 399, 400.

2. The persons who would be entitled to succeed to real estate in case of intestacy must be ascertained and determined according to the laws of Massachusetts. It has been argued, that the term " heirs at law " should be held to mean those who would be the actual heirs of Judith upon her decease, this being determined by the place of her residence; and that therefore the determination who should take as her heirs should be made according to the laws of New Hampshire. But the question after all is, What is the meaning of the testator's words? and we are brought to the conclusion that the true meaning is, to designate a set of persons who were to take the estate upon Judith's death, and that those persons are styled her heirs at law. This set of persons would not fluctuate with any changes of residence that she might make. The testator would probably not be familiar with the laws of different States. He lived here,

his will was drawn here by a Massachusetts lawyer, and it was executed here. The laws of Massachusetts are those with which presumably he would be best acquainted. The fact that he formerly lived in New Hampshire is immaterial. It is not disclosed how long he had lived in Massachusetts, nor is it necessary to go into an inquiry upon that subject. Under the circumstances stated, we must read his will as the will of a person settled and established in Massachusetts. In speaking of heirs at law, he probably meant those who would be heirs at law here. It is true, that in point of fact no land in Massachusetts was included in the residuary devise; but the devise was broad enough in its terms to include such land, if by purchase or otherwise the testator had afterwards become possessed of any. The ascertainment of the persons who were to take under the description of the heirs at law of Judith Perry did not depend upon the circumstance of where land of the testator embraced within the residuary clause might be situated. The will makes no mention of the residence of Benjamin F. Perry, or of Judith Perry, nor of the situation of the land which the testator had in mind as likely to pass by the residuary devise. In four different instances, the testator gives a remainder after a life estate to heirs at law; in one instance, to his own heirs at law. In the last instance, at least, since a will is held to speak from the time of the testator's death, he must be supposed to have meant those persons who would be his heirs at law according to the laws of Massachusetts. Ascertain the persons, and it would be the same as if they had been named in the will. And, while it must be admitted that this solution of the question is not free from doubt, we think the heirs of Judith Perry must be ascertained in the same way. *Merrill* v. *Preston*, 135 Mass. 451, 456. *Sewall* v. *Wilmer*, 132 Mass. 131, 136.

3. Under the decision in *Lavery* v. *Egan*, 143 Mass. 389, the husband of Judith Perry must be considered as her heir, to an amount not exceeding five thousand dollars in value. The statute giving to him this right was passed after the death of the testator. St. 1880, c. 211, § 1. But the testator, in providing that at the decease of Judith Perry the portion of the residue which she had held for her life should go to her heirs at law, must be held to have meant her heirs at law as ascertained by

the laws in force at her decease. Until then, it could not be determined who her heirs would be.

4. Testimony to show that the testator did not wish to have Judith's husband receive anything under the devise to her heirs at law was incompetent. *Tucker* v. *Seaman's Aid Society*, 7 Met. 188. *Osborne* v. *Varney*, 7 Met. 301. *American Bible Society* v. *Pratt*, 9 Allen, 109. At the time the will was drawn, he would not have been included under that designation. His right arises from the subsequent change in the statutes; and the testator must be held to have been content to take this chance, since he did not in terms provide against it.        *Ordered accordingly.*