THOMAS P. PROCTOR *vs.* IRENE A. CLARK & others.

Suffolk.    March 25, 26, 1891. — May 20, 1891.

Present: FIELD, C. J., C. ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Devise in Trust — "Heirs at Law" — Sale of Real Estate — Wife as Heir of Husband.*

A testator domiciled in this Commonwealth by his will gave the residue of his estate, "real, personal, and mixed," in trust for the benefit of his wife, with a power in the trustee to sell the whole or any part thereof, and directed the trustee, "upon the decease of my said wife, then to pay and convey in fee all the trust property, as it then exists" to the testator's brother, "if then living, but if he is not then living, then to convey the same in fee to his then heirs at law." The brother survived the testator and died before the wife, intestate, and domiciled in another State, leaving a sister as his only next of kin, and a widow. Both of these survived the testator's wife, the brother's widow having meanwhile married again. The trustee sold the real estate, and the trust fund amounted at the death of the testator's wife to more than $20,000. *Held,* that the fund was given to those who would be entitled by the laws of this

State to succeed to real estate in case of intestacy if the brother had died at the moment appointed for the conveyance; and that the brother's widow was entitled to an estate of inheritance in the fund up to $5,000, under the Pub. Sts. c. 124, § 3, but not to a life interest under that statute in one half of the remainder of the fund.

BILL IN EQUITY, filed February 8, 1890, by the trustee under the will of John T. Hancock, for instructions as to the disposition of a trust fund. The case was heard and reported by *Holmes*, J., for the consideration of the full court, and was as follows.

John T. Hancock, of Boston in this Commonwealth, died on October 7, 1881, and by his will, which was duly admitted to probate, in the fifth article directed his trustee in a certain event to convey certain land " to my brother, Charles Henry Hancock of the State of Minnesota, if then living, but if he is not then living, then to convey the same in fee to his then heirs at law," and in the sixth article gave " all the rest, residue, and remainder of my estate, real, personal, and mixed," to his trustee, " in trust, nevertheless, for the following purposes:

" 1st. To invest, and from time to time reinvest the same with a view to safety and profit, with power to keep the same invested as it may be at the time of my decease. And if at any time my said wife shall in writing so request, I desire that my said trustee shall sell the whole or any part of my real or personal property devised and bequeathed in this article of my will to said trustee, and reinvest the proceeds of such sale. And I hereby authorize and empower my said trustee at any time, either with or without such request to sell at public or private sale, and execute deeds to convey, the whole or any part of the estate, real or personal, that may at the time be embraced in this trust, and to invest the proceeds according to his judgment; and no purchaser shall be liable to see to the application of the purchase money.

" 2d. To pay the net income, as it accrues, to my said wife, Nancy Jennings Hancock, during her life; and if at any time, or from time to time, by reason of insufficient income, or sickness or other exigency, more should be required, then I direct my said trustee to pay to her out of the principal of said trust fund whatever sum and sums of money may in his judgment

be necessary or proper for her comfortable maintenance and support, even if the whole trust fund is taken for the purpose; but all such payments from the principal shall be first approved by the judge of the Probate Court for said county of Suffolk.

" 3d. Upon the decease of my said wife, then to pay and convey in fee all the trust property, as it then exists, to my said brother, Charles Henry Hancock, if then living, but if he is not then living, then to convey the same in fee to his then heirs at law, whereupon this trust shall end."

Charles Henry Hancock, the testator's brother, whose domicil was in Minnesota, died on February 11, 1886, intestate and without issue, leaving as his only next of kin a sister, the first named defendant, and a widow, Lydia A. Nancy J., the wife of the testator, died on January 6, 1890, and the first named defendant and Lydia A., who meanwhile had married James W. George, both survived her. The trust property at the testator's death consisted of both real and personal estate, but the trustee under the power contained in the will sold the real estate in 1885, and the trust fund now amounts to $21,000.

Lydia A. George contended that she was an heir at law of Charles Henry Hancock at his death, and that she was entitled to share equally with the first named defendant in the distribution of the fund.

The first named defendant contended that she was the sole heir at law of Charles Henry Hancock, and that she was entitled to the whole of the trust fund.

*E. Tappan*, for the plaintiff, read the papers in the case.

*J. N. Marshall*, for Irene A. Clark.

*C. Browne*, (*J. H. Taylor* with him,) for Lydia A. George.

HOLMES, J. This is a bill for the construction of a clause in a Massachusetts will, which clause is the final disposition of a trust of the residue of the testator's estate, " real, personal, and mixed," and is as follows: " 3d. Upon the decease of my said wife, then to pay and convey in fee all the trust property, as it then exists, to my said brother, Charles Henry Hancock, if then living, but if he is not then living, then to convey the same in fee to his then heirs at law, whereupon this trust shall end." The testator's widow is dead. Charles Henry Hancock died

before the widow, and the question is who take as his "heirs at law." More specifically, the question is whether the whole fund goes to his sister, Irene A. Clark, or whether his widow, now Lydia A. George, is entitled to any, and what share.

The trust fund consisted of both real and personal estate at the time of the testator's death, and is contemplated as including land by the will. This fact, the use of the words " convey in fee," and the use of the similar phrase, " convey the same in fee to his then heirs at law," in the fifth article of the will, which deals only with land, show that " heirs at law " must be construed to mean those who would be entitled to succeed to real estate in case of intestacy. *Lincoln* v. *Perry*, 149 Mass. 368, 373. *Fabens* v. *Fabens*, 141 Mass. 395, 399. *Merrill* v. *Preston*, 135 Mass. 451. The facts that the trustee is to convey the property as it then exists, and that he had power to sell and had sold the land, are not sufficient to distinguish this from the foregoing cases, and to bring it within *White* v. *Stanfield*, 146 Mass. 424. *Codman* v. *Krell*, 152 Mass. 214. *Kendall* v. *Gleason*, 152 Mass. 457.

Charles Henry Hancock died domiciled in Minnesota, but it has been decided that the words under consideration must be taken to mean those who would be entitled by Massachusetts law to succeed to land in Massachusetts. *Lincoln* v. *Perry*, 149 Mass. 368. *Codman* v. *Krell*, 152 Mass. 214.

Again, the words mean those who would have been entitled if Charles Henry Hancock had died at the moment appointed for the conveyance, that is, at the death of the testator's widow, on January 6, 1890. The gift is to Charles Henry Hancock's " then heirs." The word " then " takes the case out of the general rule illustrated by *Dove* v. *Torr*, 128 Mass. 38, *Abbott* v. *Bradstreet*, 3 Allen, 587, and *Whall* v. *Converse*, 146 Mass. 345, and brings it within the exception established by *Knowlton* v. *Sanderson*, 141 Mass. 323, *Fargo* v. *Miller*, 150 Mass. 225, and *Wood* v. *Bullard*, 151 Mass. 324, 335. For, qualifying " heirs " as it does, it can only mean heirs ascertained as of that time.

It follows that we must look to the Pub. Sts. c. 124, § 3, in order to ascertain whether the widow of Charles Henry Hancock falls within the words of the will. If her husband had died intestate, and had left no issue living, she would have taken

his real estate in fee to the amount of five thousand dollars. To that extent, at least, under our decisions, she is an heir at law. *Lavery* v. *Egan*, 143 Mass. 389. *Lincoln* v. *Perry*, 149 Mass. 368, 374. *McMahon* v. *Gray*, 150 Mass. 289, 290. *Novo jure fiunt heredes omnes qui ex senatus consultis aut ex constitutionibus ad hereditatem vocantur*. D. 5, 3, 3.

The fund is given as one whole to the heirs. Therefore, when it is settled that the widow is an heir, the will gives her a share in the whole fund, and not merely in such part as happened to be land at the testator's death. But we must look to the statutes of descent to determine the proportion which will come to her, as well as to discover whether she is one of the donees. "A devise to heirs designates not only the persons who are to take, but also the manner and proportions in which they take." *Rand* v. *Sanger*, 115 Mass. 124, 128. *Cummings* v. *Cummings*, 146 Mass. 501, 507. *Holbrook* v. *Harrington*, 16 Gray, 102, 104. *Houghton* v. *Kendall*, 7 Allen, 72, 77, 78. *Lavery* v. *Egan*, 143 Mass. 389, 393. *Bullock* v. *Downes*, 9 H. L. Cas. 1, 14, 22, 30. It is clear, then, that she takes five thousand dollars. Her right to that amount would have vested at once upon her husband's death, and would not have been devested by her subsequent marriage. See *Foster* v. *Fifield*, 20 Pick. 67, 70. But the fund is stated to amount to twenty-one thousand dollars, and the question remains whether she is "entitled during her life to one half of the other real estate," here represented by the rest of the fund, according to the further provision of the Pub. Sts. c. 124, § 3. The answer depends on whether she is to be regarded as an heir in respect of this life interest, as well as of what she gets in fee.

Undoubtedly there is nothing in the nature of things to prevent the inheritance, status, or estate of an ancestor being continued by more than one successively, as well as conjointly. When the inheritance descended to several persons as parceners, they were said to be but one heir to their ancestor. Y. B. 20 Ed. I. 200, 226. Littleton, § 241. Dyer, 29 a, pl. 194. In like manner, it was said that "he in the reversion, and the particular tenant, are but one tenant." *Brooker's case*, Godbolt, 376, 377. Co. Litt. 49 a, b, 143 a. Wingate's Maxims, 55, pl. 3 and 113. *Haynes* v. *Boardman*, 119 Mass. 414. The continuity of person

or fictitious identification of heir and ancestor (*Day* v. *Worcester, Nashua, & Rochester Railroad,* 151 Mass. 302, 307, 308) is reconcilable with either form of internal subdivision. The *persona* is one, although the individuals sustaining it are different. It may follow from *Sears* v. *Sears,* 121 Mass. 267, that a widow in possession, claiming her statutory interest, would stand better for the purpose of acquiring a title by prescription or adverse possession by tacking the time of her adverse use or occupation to that of her husband, than one having only a right of dower unassigned was held to do in *Sawyer* v. *Kendall,* 10 Cush. 241. To that extent there might be sufficient privity or partial identification between them, as there is between vendor and purchaser. *Leonard* v. *Leonard,* 7 Allen, 277.

But, on the other hand, the notion of heir always has been that of one on whom the law casts an estate of inheritance immediately on the death of the owner. *Lavery* v. *Egan,* 143 Mass. 389, 392. Co. Litt. 7 b. The takers of the life estates heretofore created by the common law or by statute on the owner's death, such as dower, curtesy, or homestead, are not heirs. The life estate in question, although now given the widow by the same section of the Public Statutes which gives her the fee up to five thousand dollars, comes from a different statute, and is given with a different end. The fee is given her by the St. of 1880, c. 211; the life estate by the Gen. Sts. c. 90, § 15 (St. 1854, c. 406, § 1). The latter is a purely optional interest in lieu of dower, and is substantially equivalent to the "estate by the curtesy or other life interest," given the husband by the Pub. Sts. c. 124, § 1. In *Sears* v. *Sears,* 121 Mass. 267, the St. of 1854 is said to be a modification of the statute of descents. The suggestion was not necessary to the decision. But whether it be true or not of the first section, as no doubt it is of others, plainly the court did not regard the widow as an heir, inasmuch as they said that immediately on the death of her husband she becomes a tenant in common with his heirs. So, in the Pub. Sts. c. 124, § 10, a widow having an undivided life interest, by the provisions of law, is contrasted with the heirs; "if her right is not disputed by his heirs," the interest may be assigned to her, etc. Taking these considerations into account, and also that, so far as we know, the contrary was never argued in this case or any other,

we are of opinion that we cannot extend the principle of *Lavery*
v. *Egan* to the widow's life interest, and therefore that she takes
only five thousand dollars.                *Decree accordingly.*