┌ JOHN H. SHERBURNE, trustee, *vs.* ADELAIDE B. HOWLAND
& others.

Middlesex.   March 30, 1921. — September 16, 1921.

Present: RUGG, C. J., DE COURCY, PIERCE, CARROLL, & JENNEY, JJ.

*Trust*, Construction of instrument creating trust.  *Devise and Legacy.*  *Words,*
"Legal heirs."

The word "heirs" when used in a will, unless the context and the circumstances
in which it is employed indicate a different meaning, is construed as meaning
those persons who take a person's real estate by inheritance upon his death.

A will of a man who died in 1866, after provisions for gifts to a large number of
blood relations of the testator, to strangers of his blood and to children of kin-
dred, provided in a thirty-fourth clause that the residue of his estate should be
given to nephews and nieces "in severalty," one half to be paid to them "in
equal proportions whenever at the end of each six months there shall be a suffi-
cient sum to divide $200 or more," and the other half to be held for them in
trust, they receiving the income, "and at the decease of either of the said
nephews and nieces I give and bequeath such ones half portion and interest
on the trust fund to his or her legal heirs; and at the decease of all of my nephews
and nieces, I give and bequeath the principal of said trust fund to their legal
heirs."  One nephew died leaving a widow and brothers and a niece as next of
kin.  *Held,* that

(1) The provision last quoted created a contingent remainder which became
vested in interest at the nephew's death;

(2) The "legal heirs" of the nephew as determined by the statutes in effect
at the time of the nephew's death were entitled to his interest in the trust;

(3) The will disclosed no testamentary intent that the words "legal heirs"
should not be used in their ordinary sense;

(4) Those entitled to benefit as the "legal heirs" of the nephew were his
widow and his next of kin.

BILL IN EQUITY, filed in the Probate Court for the county of
Middlesex on March 17, 1917, by the trustee under the will of
Jacob Foss, who died in Charlestown when it was a part of the
county of Middlesex, for instructions.

Richard H. Wiswall was appointed guardian *ad litem* for Dorothy
O. Howland, a minor, and Nathaniel C. Nash, Jr., was appointed
guardian *ad litem* for all persons not ascertained or not in being
who might be interested in the estate.

The petition was heard in the Probate Court by *Leggat, J.*,
by whose order a decree was entered, the third paragraph of which
directed that such part of the trust fund as upon the death of

Charles W. Howland was payable to his "legal heirs" should be distributed among his next of kin to the exclusion of his widow, Adelaide B. Howland. The widow appealed. The petition was heard in the Supreme Judicial Court on appeal by *Braley, J.,* by whose order a decree was entered modifying the third paragraph of the decree of the Probate Court to read as follows: "Such part of said trust fund as upon the death of said Charles W. Howland was payable to his legal heirs shall be distributed to and among his heirs at law, to wit: — Jacob J. Howland, Louis K. F. Howland, Zenas C. Howland, Dorothy O. Howland and Adelaide B. Howland."

Louis K. F. Howland and the respective guardians *ad litem* appealed.

*S. T. Harris & A. P. Gay,* for Adelaide B. Howland.

*E. D. Sibley,* for Louis K. F. Howland.

*N. C. Nash, Jr.,* guardian *ad litem* for Dorothy O. Howland.

*R. H. Wiswall,* guardian *ad litem* for all persons not ascertained or not in being.

Rugg, C. J. This petition for instructions brought by the trustee under the will of Jacob Foss was filed in 1917 and the final decree was entered in 1920. Procedure upon appeal, therefore, was to the Supreme Judicial Court sitting for the county under R. L. c. 162, § 9, and not under St. 1919, c. 274, because the proceeding was begun before the latter act took effect. The case is rightly before us by appeal from the decree of the single justice. *Jordan* v. *Ulmer,* 237 Mass. 577.

The testator died in 1866 a resident of this Commonwealth. His will was duly admitted to probate and contained many provisions. The will has been executed and his estate administered except as to clause thirty-fourth. That clause is in these words:

"All the rest and residue of my estate, real, personal and mixed, I give devise and bequeath to my nephews and nieces in severalty, to share and share alike, except William A Foss my brother Luther's oldest son. And I hereby direct, that my executors above named pay the same to my said nephews and nieces in equal proportions whenever at the end of each six months there shall be a sufficient sum to divide two hundred dollars or more, to each, except William A Foss aforesaid, until the whole of my estate is disposed of, as follows, to wit:

" To those that have severally arrived at the age of twenty one years, one half of their portion; and to the Guardians of those not arrived at the age of twenty-one years one half of said minor's portion; the other half of said portions to be invested by my said Executors in some safe and permanent security or securities, as they shall think best, and be by them held in trust, for the benefit of my said nephews and nieces, the income of which, shall be equally divided between them during their lives, annually or oftener as my said Executors may think best according to the nature or source of said income, and at the decease of either of the said nephews and nieces I give and bequeath such ones half portion and interest on the trust fund to his or her legal heirs; and at the decease of all of my nephews and nieces, I give and bequeath the principal of said trust fund to their legal heirs, including William A Foss heirs my brother Luther's oldest son."

Charles W. Howland was a nephew of the testator and came within the class of beneficiaries designated in clause thirty-fourth of the will. He died in 1916, a resident of this Commonwealth, leaving no children, a widow Adelaide B. Howland and, as his nearest of kin, three brothers and the daughter of a deceased brother.

Adelaide B. Howland alone appealed from the decree of the Probate Court. She confined her objections to its third paragraph, which alone affected her rights. The question here to be decided relates solely to that paragraph. That question is whether the widow is entitled to share in the " half portion and interest on the trust fund," held for the benefit of the nephew of the testator, Charles W. Howland, her husband, during his life, under the testamentary gift " to his . . . legal heirs."

The gift of the remainder of the estate, of which Charles W. Howland enjoyed the income so long as he lived, to his heirs on the termination of the life estate, was a gift to the heirs of the life tenant. This gift constituted a contingent remainder because it could not vest until the persons entitled to its enjoyment could be ascertained. Since no man can have heirs until his death, the ultimate beneficiaries could not be known until the death of the life tenant, when for the first time his heirs could be determined. *Putnam* v. *Gleason,* 99 Mass. 454. *Hall* v. *Farmer,* 229 Mass. 103, 104.

The word "heirs," both in its ordinary and its technical signification, denotes those who take a person's real estate by inheritance upon his death. When the word is used in wills, it is construed as having this meaning unless the context and the circumstances under which it is employed indicate a different purpose. *Holmes* v. *Holmes,* 194 Mass. 552, 557, 558. *Walcott* v. *Robinson,* 214 Mass. 172, 174.

The heirs at law of Charles W. Howland at the time of his death in 1916 were his widow and his next of kin by blood. R. L. c. 140, § 3, cls. 2, 3; c. 133, § 1, cl. 5. The wife was a statutory heir and thus a legal heir as well as his kindred of blood. *Lavery* v. *Egan,* 143 Mass. 389. *Lincoln* v. *Perry,* 149 Mass. 368, 374, 375.

Although the provisions of the statutes determining who are heirs at law have been changed subsequently to the date of the will of Jacob Foss and the admission of that will to probate, nevertheless the words of the statute at the time the words of the will become operative in fixing the ultimate beneficiaries are to control, unless a contrary intent is manifest from the will as a whole. When the testator in phrasing his will made the contingent remainder, which should vest upon the death of the several life tenants, payable to the heirs of each, it must be presumed that he intended that his beneficiaries should be the heirs as fixed by the law at the time the death of the life tenant occurred. He took his chances as to those who then should be established as heirs, because it would have been simple to have designated other remaindermen by definite and inflexible words if he had so desired. These principles have been settled by numerous decisions. *Proctor* v. *Clark,* 154 Mass. 45, 49. *Olney* v. *Lovering,* 167 Mass. 446. *Blodgett* v. *Stowell,* 189 Mass. 142.

. The present will discloses no testamentary intent that the words "legal heirs" in clause thirty-fourth were not used in their ordinary sense. There is manifest no disposition on the part of Jacob Foss to exclude the wife of his nephew from the classification "legal heirs." There are gifts in the will to a large number of blood relatives, gifts to strangers of the blood, and gifts to children of kindred. There is not any dominating and pervading purpose apparent from the words of the will that none save blood relatives should share in his bounty, or that husbands and wives should be shut out provided they come within the sweep of the

general classification "legal heirs." Without analyzing one by one the other provisions of the will, it is enough to say that the case at bar is fully governed by the reasoning and the decision in *Gray* v. *Whittemore*, 192 Mass. 367, 380–383.

*Decree of single justice affirmed.*