## Carter's Estate

Before Gest, Henderson, Van Dusen, Stearne and Sinkler, JJ.

The facts appear from the following extract from the adjudication of

VAN DUSEN, J., auditing judge.—This trust arose under the will and codicil thereto of James H. Carter, who died May 8, 1886 . . . whereby he devised and bequeathed one fourth of his estate to Philadelphia Trust, Safe Deposit and Ins. Co. of Phila. (now Fidelity-Philadelphia Trust Co.) in trust to pay the income to his daughter, Ella Carter, for life, with remainder "to transfer, pay and divide the said property or the proceeds thereof among her heirs share and share alike."

The fund accounted for was awarded to the accountant by adjudication of the account of the executor of the will of James H. Carter, filed July 28, 1886; and the account is filed because of the termination of the trust by reason of the death of Ella Carter on September 19, 1931; she died domiciled in Cape May County, N. J., and Fred K. Ramsey is executor of her will.

The question arises, by what law are Ella Carter's heirs to be determined. Both testator and Ella Carter were domiciled in Pennsylvania at the time the

92

codicil was written, but some ten years after testator's death Ella Carter removed to New Jersey and died domiciled there.

According to the Restatement of the Law by the American Law Institute in its final draft form, sec. 329: "The interpretation of a will of movables, in the absence of controlling circumstances to the contrary, is governed by the usage in the state of the domicile of the testator at the time he made the will." This statement is amply supported by all the authorities, and there is no dissent from it, so that the reasons need not be examined: Story, Conflict of Laws, sec. 479 (a), 490; Dicey, Conflict of Laws, 816, rule 196; Goodrich, Conflict of Laws, sec. 161, and cases there cited.

This bequest occurs in a codicil dated at Philadelphia October 1, 1879. At that time, as now, by the law of Pennsylvania, first cousins took to the exclusion of first cousins once removed, and I will so award.

If the bequest is to go to those entitled as the heirs of Ella Carter under New Jersey law, it must be the law in force at the time of her death. I find that this law is as stated in the letter of Judge Starr attached to the petition for distribution and the persons entitled by that law are as stated therein. . . .

*Walter B. Gibbons*, for exceptants; *Harry Howard Bent*, contra.

GEST, J., December 29, 1933.—The facts of this case are few and may be succinctly stated. The testator, residing and domiciled in Philadelphia, by a codicil to his will dated October 21, 1879, devised one fourth of his estate, composed of personalty, in trust for his daughter, Ella, during her life, and in trust "upon her death to transfer, pay and devise the said property or the proceeds thereof among her heirs share and share alike." The testator died in 1886, remaining domiciled in Philadelphia, but 10 years afterwards Ella Carter, by marriage McKnight, removed to New Jersey and died domiciled there in 1931. It was conceded that under the law of Pennsylvania the heirs of the life tenant are her first cousins; under the law of New Jersey, however, representation extends to the children of first cousins or cousins once removed, and, in their behalf, it was contended that these cousins once removed are entitled to share in the distribution.

The auditing judge decided that the law of Pennsylvania governed the distribution, and distributed the estate among the first cousins. This ruling in our opinion is supported by both reason and authority. The question is really one of testamentary construction. Whom did the testator have in mind as the objects of his bounty? Clearly we think he meant all those persons on whom by the law of his own State the inheritance would be cast upon his daughter's death. He may indeed be presumed to know the law of his home State, and even if that presumption be regarded as strained, he certainly may safely be presumed not to know the laws of 47 other States. If, when he made his will, his daughter had been domiciled in another State or country, there might be some room for argument, though even then it was decided in re Fergusson's Will [1902], 1 Ch. 483, that the law of the domicile controlled, or if there were some special provision in the will to show that the testator had the law of another jurisdiction in his mind that law might govern: see Riesenberg's Estate, 116 Mo. 308, 90 S. W. 1170 (St. Louis Court of Appeals).

In accordance with this principle of testamentary construction, Justice Story said, in Harrison et al. v. Nixon, 9 Peters 502, "[Wills] are supposed to speak the sense of the testator according to the received laws and usages of the country where he is domiciled, by a sort of tacit reference; unless there is something in the language that repels or controls such a conclusion. In regard to per-

sonalty in an especial manner, the law of the place of the testator's domicile governs in the distribution thereof, and will govern in the interpretation of wills thereof; unless it is manifest that the testator had the laws of some other country in his own view."

And this appears to be the law in Massachusetts: Lincoln v. Perry et al., 149 Mass. 368; Proctor v. Clark et al., 154 Mass. 45; Brandeis, Trustee, v. Atkins et al., 204 Mass. 471; and in Maine, Houghton v. Hughes, Trustee, 108 Maine, 233; see Dicey on Conflict of Laws (5th ed.), 816, rule 196. Some of these decisions go further than we are required to decide in the present case, and we observe, by way of caution, that we are here concerned only with personal estate, and there is no question of status involved.

The exceptions are dismissed and the adjudication confirmed absolutely.