ROBERT L. DAY & others *vs.* WORCESTER, NASHUA, AND ROCHESTER RAILROAD COMPANY.

Suffolk.   January 14, 1890. — March 5, 1890.

Present: DEVENS, W. ALLEN, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Railroad Consolidation — Liability of New Corporation — Demand — Statute.*

A railroad company under lease issued bonds convertible into shares of its stock at par at any time after the completion of its road, and the lessee guaranteed and paid interest upon them directly to the bondholders. The lessee was then authorized to purchase the bonds and the lessor's stock, which was still to be convertible for bonds on presentation, and afterwards caused an exchange of the bonds for new bonds, differing only in being at a lower rate of interest, and mortgaged its own road as additional security for them. Subsequently the road was completed, and the lessor and the lessee, as authorized, united on terms of perfect equality, the new corporation being made subject to all the liabilities and contracts of either corporation. After the consolidation, the new corporation paid

interest on the bonds, and a bondholder demanded of it shares of its stock for his bonds. *Held*, that the new corporation was bound to deliver its own stock for the bonds, or to pay the damages occasioned by such refusal, and that the demand was sufficient.

CONTRACT to recover damages for the non-issue of shares of stock in exchange for bonds. Writ dated March 17, 1888. At the trial in the Superior Court, before *Bishop*, J., the following facts were agreed, or appeared in evidence.

The Nashua and Rochester Railroad Company, a New Hampshire corporation, in 1872, prior to the construction of its road, was leased for fifty years to the Worcester and Nashua Railroad Company, a corporation duly organized under the laws of that State and of this Commonwealth. The lessor subsequently issued bonds, dated April 1, 1874, to the amount of seven hundred thousand dollars, secured by a mortgage on its railroad, as authorized by the St. of N. H. of 1873, c. 139, which provided, in § 2, that the bonds might be " converted into shares of the capital stock of the corporation at the par value of one hundred dollars each, at the option of the holder, at any time after the completion of the road "; and in § 3, that the lessee should " indorse the said bonds, or otherwise guarantee the payment thereof, and the interest thereon." Subsequently the lessee guaranteed the bonds, and the lease was modified by agreement so as to require it to pay to the holders directly the six per cent interest due thereon. The St. of N. H. of 1875, c. 128, authorized the lessee to purchase and hold, or have held for its benefit, bonds or shares of the capital stock of the lessor, and also provided, in § 1, that " any shares of the capital stock of the Nashua and Rochester Railroad shall be exchanged at par for said bonds by the Worcester and Nashua Railroad Company upon presentation." By the St. of N. H. of 1879, c. 125, the holders of the bonds were authorized to surrender any or all of the bonds, and receive in lieu thereof new bonds of the same date and to the same amount, the mortgage to be security for the new bonds in the same way and manner, and to the same extent, as it was for the bonds surrendered; and the new bonds were issued, which carried interest at five per cent, and were substantially like the old bonds, except in reciting the facts that they were issued in exchange for them, and that they had the

additional security of a mortgage on the lessee's railroad.  Both the original bonds and the substituted bonds contained the following language: " The holder of this bond may convert the same into shares of the capital stock of the corporation at the par value of one hundred dollars each, at the option of the holders, at any time after the completion of the road, upon the surrender of said bond at the office of the treasurer of the corporation."  The plaintiffs were the owners and holders of twenty-four of the new bonds, each of which was of the denomination of one thousand dollars.

In 1883, before which time the lessor's road was completed, the lessee and the lessor were authorized by the St. of N. H. of 1883, c. 239, to unite and form a new corporation at any time within six years, upon the condition that the holders of shares of the capital stock in either of said corporations might, upon surrender of such shares, receive in lieu thereof certificates for an equal number of shares in the corporation to be established under this act, and upon such other equal terms for each such share as might be mutually agreed upon.  In § 2 of the act it was provided that " the corporation so established shall have, hold, and possess all the powers, privileges, rights, franchises, property, claims, and demands which, at the time of such union, may be held and enjoyed by the said existing corporations, and be subject to all the duties, restrictions, obligations, debts, and liabilities to which, at the time of the union, either of said corporations is subject ; . . . all claims and contracts, and rights and causes of action at law or in equity, of or against either corporation, may be enforced by suit or action, to be commenced and prosecuted by or against the corporation to be established under this act as aforesaid " ; and in § 4, that after the consolidation each of the said existing corporations should continue, for the purpose of perfecting the same, to execute all such transfers, assignments, and conveyances as might be deemed necessary to vest in the new corporation any property, estates, contracts, rights, or claims not vesting in it by authority of the act.

The St. of 1883, c. 129, of this Commonwealth, was of like tenor with the statute of New Hampshire of 1883.

The stockholders of both corporations, under these statutes, united and formed one corporation, by an agreement in writing,

which provided that the new corporation should be known as and called the Worcester, Nashua, and Rochester Railroad Company; that on and after December 1, 1883, " each holder of stock in either of said corporations shall be and become a stockholder of the same number of shares in the consolidated company, and may at any time surrender his certificate of stock, and the same shall be cancelled and he shall receive in lieu thereof a certificate of the same number of shares in said consolidated company, which shares shall be in every respect of equal value, and entitled to the same dividends; and we do further agree, for the purpose of equalizing said shares, that a dividend computed at the rate of three per cent per annum shall be paid to the holders of stock in either of said corporations, from the dates of the last dividends declared to the time said union takes place."    The last dividends of the Worcester and Nashua Railroad Company and of the Nashua and Rochester Railroad Company were paid on July 2, 1883, and on October 1, 1883, respectively; and for the purpose of equalizing the shares of each, a further dividend at the rate of three per cent per annum from these dates was paid to the shareholders of each company.

After the consolidation the interest upon the plaintiffs' bonds was paid by the new corporation until October 1, 1886, including the coupons then payable.    On May 27, 1887, the plaintiffs surrendered their bonds, and tendered them to the defendant's treasurer, and demanded in writing in exchange therefor two hundred and forty shares of the stock of the defendant corporation at par, on the ground that the defendant company had succeeded to all the assets and liabilities of both the consolidating corporations.    This demand was refused by the defendant.

Upon the above facts, the defendant asked the judge to rule, among other things, that the plaintiffs were not entitled to recover, because by the consolidation the original corporations ceased to exist and the contracts were thereupon discharged; because no demand had been made upon the defendant corporation for stock of the Nashua and Rochester Railroad, which was the only stock the plaintiffs were entitled to under their contract; and because, having acquiesced in the consolidation and availed themselves of its benefits, they had elected to affirm it,

and could not recover upon a cause of action based upon the invalidity of the consolidation.

The judge refused so to rule, and found for the plaintiffs for the difference between the market value of their bonds on May 27, 1887, and that of two hundred and forty shares of stock of the defendant corporation, or $9,288.44, with interest; and the defendant alleged exceptions.

*R. Olney*, for the defendant.

*G. O. Shattuck & W. A. Munroe*, for the plaintiffs.

HOLMES, J.    This is an action against a corporation formed by the consolidation of the Nashua and Rochester Railroad and the Worcester and Nashua Railroad, to recover damages for a refusal to issue stock in exchange for bonds of the former road, in accordance with a provision in the bonds.    The facts are the same as in *John Hancock Ins. Co.* v. *Worcester, Nashua, & Rochester Railroad*, 149 Mass. 214, except that it now appears affirmatively that the consolidation actually was carried out on the footing of equality between the shares of both the old corporations and the shares of the new one, as was contemplated by the statute authorizing it, a point which was doubtful before, (149 Mass. 219, 220,) and except that in the present case the demand was for stock in the new corporation alone.

The argument of the defendant has not been addressed to the technical sufficiency of the demand, but to showing that the former decision should be reconsidered.    We do not accede to the argument, but, as there seems to have been some misapprehension of the meaning of the judgment in the former case, we shall add something to what was said there in the hope of making plainer our point of view.

For the purposes of the decision, we assume that the bonds did not import a contract by the Nashua and Rochester Railroad Company to continue in existence until they were satisfied; that the contract in the bonds to exchange them for stock was only binding so long as the Nashua and Rochester Railroad Company was in existence; and that the Legislature did not attempt to enlarge or change the liability created by the bonds. Therefore we do not stop to consider how the defendant can complain of the act under which it has come into existence, and which was voluntarily accepted by its constituent compa-

nies. *Braintree Water Supply Co.* v. *Braintree,* 146 Mass. 482, 486. *New Bedford Railroad* v. *Old Colony Railroad,* 120 Mass. 397. *Pitkin* v. *Springfield,* 112 Mass. 509.

The argument for the defendant tacitly assumes that the Nashua and Rochester Railroad Company has ceased to exist, to all intents and purposes, and concludes that therefore there is no longer any obligation to deliver stock for the bonds; a conclusion which would follow by the premise which we have conceded. But the very point decided in the case of the John Hancock Insurance Company was, that by the true construction of the consolidating act the Nashua and Rochester Railroad Company has not ceased to exist, but that for the present purposes the defendant is that company with a different name.

Assuming for the moment that this construction is correct, there can be no question of the power of the Legislature to authorize a consolidation upon those terms. A change of name, an acquisition of new property and rights, or both together, do not necessarily make a change of person. To add another illustration to those suggested formerly, if the Legislature authorizes one railroad, which has issued bonds like the present, to buy the franchise, property, and stock of another, and to issue new stock of its own to an equal amount, with an express proviso that the identity of the purchasing road shall remain unchanged, and thereupon the purchase is made, we conceive that there can be no doubt that the purchasing road is still bound to deliver stock for bonds as before. If the bondholder could not complain of the increased issue, (*Pratt* v. *American Bell Telephone Co.* 141 Mass. 225,) it is very certain that the company could not, and least of all on the ground that it was no longer the same company. *Central Railroad & Banking Co.* v. *Georgia,* 92 U. S. 665. See *New Bedford Railroad* v. *Old Colony Railroad,* 120 Mass. 397, 400.

In the case supposed, the identity of the purchasing road remains unchanged for all purposes. But the law is equally familiar with the preservation of identity for a particular purpose when in other respects it is changed. More than that, it is familiar with an identification of natural persons, which of course is wholly feigned, for the preservation and transmission of rights and duties. The heir " is the same person as his

ancestor." *Oates* v. *Frith,* Hob. 130.  *Bain* v. *Cooper,* 1 Dowl. Pr. Cas. (N. S.) 11, 14.  Executors " represent the person of their testator."  St. 9 Ed. III. St. 1, c. 3.  Littleton, § 337.  *Coghil* v. *Freelove,* 3 Mod. 325.  *Bain* v. *Cooper,* 1 Dowl. Pr. Cas. (N. S.) 11.  Administrators " represent the estate " of their intestate.  *North* v. *Butts,* Dyer, 139 b, 140 a.  Even assigns get the benefit of a warranty to which they were not parties through an attenuated form of the same notion.  *Norcross* v. *James,* 140 Mass. 188, 189.  Similar illustrations are referred to in *Compton* v. *Railway Co.* 45 Ohio St. 592, 616.

When two corporations are consolidated, no doubt for most purposes they cease to exist, and the new corporation is a distinct person in the eye of the law, although it is their " legal successor."  *Graham* v. *Boston, Hartford, & Erie Railroad,* 118 U. S. 161, 168.  But no fiction is necessary so far as the Legislature sees fit to say that the new corporation shall be regarded as the same with one of the old ones, or even alternately as the same with each ; or, more explicitly, that although the new corporation is a new person for the acquisition of new rights or the making of new contracts, the old corporations shall not be altogether ended, but shall continue under the new name so far as to preserve all their existing obligations unchanged.  *Compton* v. *Railway Co.* 45 Ohio St. 592, 618.  If that is made a condition of the consolidation, the consolidating companies do remain in existence to that extent.  There is no greater legal difficulty in continuing the liability upon a contract to exchange stock for the bonds, than there is for continuing it upon one to pay money for them.  In neither case does the Legislature say, in terms, that the old corporation shall be taken to remain in existence for this purpose ; but if it requires the end, it implies the means.  *Quando aliquid mandatur, mandatur et omne per quod pervenitur ad illud.*  See *Broughton* v. *Pensacola,* 93 U. S. 266, 269, 270 ; *Atlantic National Bank* v. *Harris,* 118 Mass. 147, 151 ; *Coffey* v. *National Bank of Missouri,* 46 Misso. 140, 143 ; *Board of Administrators* v. *New Orleans Gas Light Co.* 40 La. An. 382.

To our mind the only really debatable point is not what the Legislatures of New Hampshire and Massachusetts could do as against the consolidating companies, but what they did in fact; that is, what is the true construction of the words of the

New Hampshire St. of 1883, c. 239, and of our St. of 1883,
c. 129. *Railroad Co.* v. *Georgia,* 98 U. S. 359, 362. *Central
Railroad & Banking Co.* v. *Georgia,* 92 U. S. 665, 670. Upon
that point we always have recognized that different minds might
form different opinions. To justify our own, it is unnecessary
to repeat the very sweeping language of the statutes, which
seems to be as broad as could have been used had the Legisla-
tures had this particular obligation in mind. The question is
not whether words on their face insufficient should be stretched
by construction to embrace the obligation in the bonds. It is
whether the words " all the obligations, debts, and liabilities,"
and " all claims and contracts," &c., shall be cut down upon
some extrinsic reason.

We find no such reason. On the contrary, every extrinsic
fact is in favor of giving its natural meaning to the laboriously
comprehensive language of the acts. The road of the obligor
was let to the Worcester and Nashua Railroad before it was
built, by authority of statute. The statute which authorized
the issue of these bonds, and required them to be convertible
into stock, also required the Worcester and Nashua Railroad to
guarantee them, and it did so. It paid the interest upon them
directly to the bondholders, and its lease was changed so as to
require it to do so. Afterwards it brought about an exchange
of the original bonds for others at a lower rate of interest, but
otherwise like the old ones, and mortgaged its road as additional
security for them. In 1875 the Worcester and Nashua Rail-
road was authorized to purchase the bonds and stock of the
obligor, providing for the continued exchange of stock for bonds
on presentation. Finally, the last step was taken of authorizing
a consolidation on terms of perfect equality, which was carried
out. Under the existing relations of the companies it was little
more than a formal act.

In view of the fact that every step taken was in pursuance of
special legislation, it is not to be believed that the most im-
portant obligations which then were outstanding were forgotten,
or were not contemplated. It is probable that this particular
feature of them, which had been protected in 1875, was before
the mind of the Legislature. The effect of consolidation, if, as
we must assume, the terms prescribed and assented to were

just, was simply to bring together two groups of shares of equal value.	Justice to the bondholders forbade allowing the Nashua and Rochester Railroad to extinguish itself to their detriment. No injustice was done to stockholders by continuing its existence under the altered name.	We must decide a second time, that for the purpose of continuing the obligation of these bonds in existence according to their tenor the defendant is the Nashua and Rochester Railroad Company.

The reasoning which has led us to the conclusion that the defendant is bound to make good the contract of the Nashua and Rochester Railroad to exchange its stock for bonds, and the fact that the Nashua and Rochester stock, if delivered, would have been exchangeable at once for the defendant's stock, share for share, lead us to the further conclusion that the defendant was bound to deliver its own stock, and that the demand was sufficient.	*Exceptions overruled.*