NORTHWESTERN NAT. LIFE INS. CO. v. JAY H. HARE.

1. WHEN ANSWER SUPPLIES OMITTED ALLEGATION OF PETITION OVERRULING OF DEMURRER NOT ERROR.

When the answer supplies an omitted and necessary allegation of the petition, the error of the trial court in overruling a demurrer thereto ceases to be reversible error.

2. CAUSE OF ACTION FOR DAMAGES STATED, WHEN.

A cause of action for damages in favor of plaintiff is stated when the petition, aided by the answer, sets forth broadly that defendant entered into a contract with plaintiff; that plaintiff fully performed the contract on his part; that defendant renounced the obligation of an essential term thereof before its performance became due, and declared that it would not perform it when performance became due.

3. MEMBER OF LIFE ASSOCIATION CEASES TO BE MEMBER, WHEN.

When a life insurance association transfers all its assets and obligations to another company, which the latter assumes, a member of the retiring company, who ratifies such transfer of assets and assumption of obligations, thereby ceases to be a member of the retiring company.

4. INSURER CANNOT AFFIRM OR REJECT POLICY IN PART.

A life insurance association company cannot affirm its policy of insurance in part and repudiate it in part, thereby confining the assured to one of the benefits therein provided for when he had paid for the right to elect between two benefits therein set forth Hence, when the obligation of the insurer was to pay $3,000 in event of death, or, at the election of assured, to pay in final settlement, at a certain date, an amount to assured in cash "equal to ten full annual premiums as paid by insured," the company cannot, in such case, defend against the election of assured to accept the latter option on the ground that such obligation was *ultra vires* the company, and at the same time insist that assured be held to and bound by the "whole life clause."

5. PREMIUMS PAID UNDER ULTRA VIRES POLICY MAY BE RECOVERED—DAMAGES.

When an insurance association properly refuses to perform, before due, its contract of insurance on the ground that it is *ultra vires* the association, a cause of action *quasi ex contractu* immediately arises in favor of assured to recover all premiums paid. But if the contract is not *ultra vires*, and the disaffirmance is wrongful, the assured may treat the contract as discharged, and sue at once for damages for its breach; and the fact that recovery is asked of the premiums paid, instead of damages, is immaterial.

6. CONSOLIDATED COMPANY ASSUMES VALID DEBTS AND OBLIGATIONS OF CONSTITUENT COMPANIES.

All the valid debts and liabilities of constituent life insurance companies are impliedly assumed by a new company formed by consolidation; the liability of the consolidated company being precisely the same as that of the respective constituent companies. Hence, premiums paid to a constituent company under an *ultra vires* policy of insurance, together with premiums paid to a predecessor of such constituent company (the latter

having expressly assumed all the obligations of the original company, which assumption was ratified by assured), may be recovered from the consolidated company.

**7. CONSOLIDATED COMPANY NOT ESTOPPED FROM PLEADING ULTRA VIRES CONTRACTS OF CONSTITUENT COMPANIES.**

An option contained in a life insurance policy was *ultra vires* the insurance company; the company closed its business, and was succeeded by another company which assumed its obligations, including the obligation under the option referred to; the transfer was ratified by assured, and the payment of premiums continued by him to the successor company; the latter was afterwards absorbed by or consolidated with another company, which received, adopted and recognized the assured as one of its members: *Held,* the consolidated company was not estopped from pleading that the option was *ultra vires* the original and constituent companies, notwithstanding full performance on the part of the assured.

**8. EFFECT OF FAILURE TO MAKE FURTHER PAYMENTS OF PREMIUMS UNDER ULTRA VIRES POLICY.**

Failure of assured to make further payments of premiums under an *ultra vires* policy of insurance, cannot result in any forfeiture of his right to recover from the company the premiums already paid.

ERROR to common pleas court of Wyandot county.

In the orginal action commenced in the court of common pleas of this county, defendant in error was plaintiff and plaintiff in error was defendant.

The petition states in substance that on May 5, 1891, the Omaha Life Insurance Association of Omaha, Neb., entered into a contract of life insurance with plaintiff and then issued its policy of life insurance to him and thereby agreed in consideration of the payment by plaintiff to it of an annual premium of $42.36 payable in quarterly installments and due on the fifth day of each May, August, November and February during the continuance of said contract, that said association would pay, in the event of plaintiff's death and timely and satisfactory proofs thereof, the sum of $3,000 to a named beneficiary. Said policy, among other things, also stipulated " that at the expiration of ten years from the first day of January next ensuing the date of the incorporation and every year thereafter the managing board of directors shall declare a dividend from the reserve fund in excess of $100,000 and cause to be placed to the individual credit of each member who has maintained ten years un- uninterrupted membership in the association his equitable share thereof which sum thus issued is available and may be used by such member * * * (2) may be withdrawn and membership terminated."

The policy also provided that the sum which might be withdrawn " shall be in amount not less than ten full annual payments as paid by the insured " and if the reserve fund be found insufficient to meet this liability any deficiency therein shall be made good by transferring from the mortuary fund to the reserve fund such a sum as is required to make

it good. If any member desired to so withdraw he was required to give a certain notice of such desire and intention.

The petition further states that after said policy was issued by said insurer and after it had been paid all premiums due to a certain time by plaintiff, said insurer transferred all its rights and interests in the said policy to the Omaha Life Insurance Association of Minneapolis, Minn. Plaintiff paid all premiums to this succeeding association until a later date when the rights and the interests of the latter were in turn transferred by it to the National Mutual Life Insurance Association of Minneapolis, and after further payments by plaintiff the latter association transferred its interests in said policy to defendant. Plaintiff has paid the premiums falling due since the last transfer to defendant. It is alleged that all these associations were in fact one organization differing in name only, and that the stated transfers were made only because the said changes of the name rendered the same necessary. Plaintiff states that he gave due notice of his intention to withdraw his dividend under the quoted provisions of his policy; that defendant has not provided a fund to pay plaintiff, refuses to settle with him, has declared plaintiff's policy forfeited and refuses to pay him the amount alleged to be due. Plaintiff prays to recover that amount of ten full annual payments as made by him with interest from the date each payment was made. This action was commenced August 3, 1901.

Defendant's general demurrer to the petition was overruled. It then answered, (1) a general denial; (2) that the alleged assumption of said obligation of plaintiff's policy is and was *ultra vires* defendant and its immediate predecessor; (3) that no fund exists or has existed from which plaintiff can be paid and it is *ultra vires* defendant to create such fund; (4) that plaintiff failed to pay the quarterly premium on his policy due May 5, 1901, and that by reason thereof said policy under its terms became and at the commencement of this action was null and void.

Plaintiff by reply denies all allegations of the answer and pleads an estoppel to the defense of *ultra vires*.

Upon these issues the action was tried to a jury. Defendant at the trial objected to the introduction of any evidence by plaintiff for the assigned reason that the petition is fatally defective.

This motion was overruled.

At the close of plaintiff's evidence defendant moved for a verdict. This motion was overruled. The motion was renewed at the close of all the evidence and was again overruled.

The jury returned its verdict for plaintiff. Defendant's motion for a new trial was overruled and judgment was entered for plaintiff upon

the verdict. A bill of exceptions was duly taken embodying all the evidence and proceedings at the trial and defendant now prosecutes error here to reverse the judgment of the common pleas.

The errors assigned embrace in general and in detail all the rulings made by the trial court adverse to defendant, and to all of which due exceptions were taken.

**Brown & Kerr** and **Carter & Goodrich**, for plaintiff in error.

**Carey & Parker**, for defendant in error.

## MOONEY, J.

If this action be viewed as one to enforce any of the terms of the policy it seems to be very clear that the petition does not state facts sufficient to constitute a cause of action. The stipulation of the policy as pleaded is that on January 1, next after the expiration of ten years from the date of incorporation of said Omaha Life Insurance Association of Omaha, Neb., a dividend will be declared, etc., and upon due notice and after ten years' uninterrupted membership plaintiff may withdraw. Unless said association were incorporated prior to January 1, 1901, the time at which the dividend was first to be declared under this stipulation had not arrived on May 5, 1901, and the defendant in the original action could not have been in default when the action was commenced. There is no allegation in the petition as to the date of incorporation of said association and hence no default is charged against defendant.

Again, the stipulation does not require any dividend to be declared in favor of any member until his membership has been of ten years' uninterrupted duration. The first dividend is to be declared on January "and each year thereafter." The meaning is "and on January 1, of each year thereafter." Plaintiff had not been a member for ten years on January 1, 1901, and hence he was not entitled to have a dividend then declared in his favor and this action was commenced before January 1, 1902, the earliest date at which defendant could be in default to plaintiff for failure to declare a dividend in his favor.

It is here contended by defendant in error that the action is not one to enforce the contract or any term of it but to recover damages on account of the renunciation of the contract by defendant below.

While the allegations of the petition are somewhat indefinite upon the point, we are of opinion that it fairly appears from the pleading that defendant upon demand of a settlement as claimed by plaintiff, refused to make such settlement not for the reason that the time for settlement had not arrived but because defendant denied its obligation to make such settlement at any time. The uncertainty of the petition on this point is aided by the answer in which defendant denies the obligation.

for the reason, among others, that the term of the contract is *ultra vires* all said associations. In such state of the record even if the demurrer should have been sustained to the petition, the error in overruling it ceases to be reversible error when the answer filed supplies an omitted and necessary allegation of the petition. Yocum v. Allen, 58 Ohio St. 280 [50 N. E. Rep. 909].

So aided by the answer, the petition states broadly that defendant having entered into a contract with plaintiff, renounced the obligation of an essential term of that contract before performance became due and declared that it would not perform that term of the contract when the time for such performance should fall due; wherefore plaintiff asks to recover the consideration paid by him to defendant, as full performance of the contract upon his part. We are of opinion that these facts entitle plaintiff to recover some amount as damages from defendant and this whether the terms of the policy were *ultra vires* or not.

If the contract be *ultra vires* and the insurance association properly refuses to perform, an action *quasi ex contractu* springs up in favor of Hare to recover the premiums which he has paid. Phoenix Life Assn. Ins. Co. In re, 2 Johns. & Hem. 441; Andrews v. Insurance Co. 37 Me. 256, 257; Miller v. Insurance Co. 92 Pa. St. 167; and see Insurance Co. v. Tullidge, 39 Ohio St. 240; see also Branch v. Jesup, 106 U. S. 468 [1 Sup. Ct. Rep. 495; 27 L. Ed. 279]; Central Transp. Co. v. Car Co. 139 U. S. 24 [11 Sup. Ct. Rep. 478; 35 L. Ed. 55]; Morville v. Tract Soc. 123 Mass. 129 [25 Am. Rep. 40]; Davis v. Old Colony Railroad, 131 Mass. 258, 275 [41 Am. Rep. 221]; 5 Thompson, Corporations Sec. 6004; 1 Clark & Marshall, Corporations Sec. 215.

If the contract be not *ultra vires* and the disaffirmance be wrongful, the case is simply one of renunciation of the obligation of an essential term of a contract by a party before performance upon his part becomes due. In such case the other party may treat the contract as discharged and sue at once for damages for its breach. Clark, Contracts p. 644 *et seq.,* citing cases.

The fact that the recovery sought is alleged to be for premiums instead of damages or for performance instead of damages for nonperformance, is immaterial. James v. Allen Co. 44 Ohio St. 226 [6 N. E. Rep. 246; 58 Am. Rep. 821].

It follows that in any view of the case the demurrer to the petition and the motions to direct a verdict for insufficient pleadings were properly overruled. We are of the opinion that there is error in this record in the admission of evidence and in the charge of the court to the prejudice of plaintiff in error and in the refusal to charge as

requested by defendant below. In this state of the record the judgment of the common pleas must be reversed unless upon the admitted or undisputed facts the judgment is well founded in law.

The facts either admitted or undisputed are these: On May 5, 1891, the Omaha Life Insurance Association of Omaha, Neb., issued its certificate of membership and policy of life insurance to defendant in error for $3,000, payable in the event and upon satisfactory proofs of his death to a named beneficiary. The insurer was a Nebraska assessment life insurance corporation. Premiums were payable as stated in the petition. Hare paid all premiums maturing until May 15, 1895, to said insurer and at this date "all the liabilities or obligations of the Omaha Life Insurance Association of Omaha, Neb., under any and all policies or certificates of insurance or membership in said association " were assumed by the Omaha Life Insurance Association of Minneapolis, Minn., a Minnesota assessment life insurance corporation. The former association retired from business and transferred its assets and business to the latter corporation. The latter issued its certificate to defendant in error and thereby undertook " to bind itself to perform the obligations of the insurer under his policy " as fully as if the same were issued in the name of the Omaha Life Insurance Association of Minneapolis, Minn. Defendant in error ratified the arrangement entered into between these corporations and paid all premiums maturing between May 15, 1895, and December 5, 1898, to the last-named corporation.

On December 5, 1898, said last-named corporation was succeeded by the National Mutual Life Association, a like Minnesota corporation, and by the provisions of a certain contract entered into between the companies the assets of the Omaha of Minneapolis were transferred to the National Mutual and the latter assumed "all the obligations or indebtedness on account of the policies " of the former, and the Omaha, of Minneapolis, retired from business. Defendant in error ratified this arrangement and paid all premiums maturing thereafter until and including the one due February 5, 1901, to the National Mutual.

On February 21, 1901, the assets and business of the National Mutual were absorbed by plaintiff in error, and thereafter plaintiff in error treated with defendant in error as its member and policy holder, demanded the payment of further premiums, tendered an option other than the one stated in the policy in settlement, declared that the policy would become null and void in a certain contingency, stated on April 23, 1901, that " the only liability which this company has now under your contract is the liability to pay your death loss should it occur," all before the original action was commenced, and in the original action set up the defense of

*ultra vires.* In ratifying each of the assumption agreements defendant in error ceased to be a member of the retiring company in each instance. None of these companies had corporate power to contract to return premiums paid or to create a fund to be applied for that purpose. The policy issued by the original insurer to defendant in error, the obligation of which was assumed by the succeeding companies to and including the National Mutual, stipulated for the declaration of a dividend with options to the insured as stated in the petition.

The obligation of the original insurer under the policy was to pay $3,000 in the event of death or at the election of insured at a certain date to pay in final settlement an amount in cash " equal to ten full annual premiums as paid by insured." It is very evident that the insurer cannot defend against the election and option on the ground of *ultra vires* and at the same time insist that defendant in error should be held to the " whole life " clause of the contract. In consideration of his payment of premiums defendant in error under the contract was entitled to one stipulated benefit no less than the other at his election. The insurer could not affirm in part and repudiate in part the terms of the contract and thus confine defendant in error to one benefit when he had stipulated and paid for the right to elect between two benefits. The insurer's contract was and is void for want of power to make it, and the contracts of the succeeding companies, except plaintiff in error, were and are each void for the same reason. In as much as the performance that still remains due consists of the very *ultra vires* act itself, it is believed that if the insurer were a party here the doctrine of estoppel would not apply. The cases are in conflict upon the question, but without discussion we hold, we believe in accordance with the weight of authority that defendant below was not estopped to make the defense of want of power. 1 Clark & Marshall, Corporations Sec. 214b. Compare 1 Clark & Marshall, Corporations Sec. 214a.

If the contract of insurance is void on the ground of *ultra vires* and if defendant is not estopped to make the defense, and if the original insurer were that defendant, it is very clear that plaintiff below could recover from the insurer the premiums which it had received upon the contract.

" The courts while refusing to maintain any action upon the unlawful (*ultra vires* but not immoral) contract have always striven to do justice between the parties." Central Transp. Co. v. Car Co. 139 U. S. 24, 60 [11 Sup. Ct. Rep. 478; 35 L. Ed. 55].

" If the contract is *ultra vires* and either party disaffirms it on the ground that it is *ultra vires,* and refuses further execution of it, then,

while the other party cannot sue to recover damages or compensation in respect of the unexecuted portion of the contract, yet the law will afford him remedies for procuring from the other party a restoration of what he has lost under it." Thompson, Corporations Sec. 6004; Andrews v. Insurance Co. 37 Me. 256, 257; Miller v. Insurance Co. 92 Pa. St. 167.

Plaintiff below never paid any premiums to defendant below. The liability, if any, of defendant must therefore result from the contract whereby the National Mutual was absorbed, amalgamated, merged in or consolidated with said defendant and whereby plaintiff was received, adopted and recognized as a member of defendant company.

In Langhorne v. Railway Co. 91 Va. 369, 374 [22 S. E. Rep. 159, 161], it was held that:

"The surviving corporation, when another or others are merged into it or consolidated with it, is ordinarily deemed the same as each of the corporations which formed it for the purpose of answering for the liabilities of the old corporation, and may be sued under   *   *   *   the name of the surviving company for their debts as if no change had been made in the name or in the organization of the original corporations."

In Louisville, N. A. & C. Ry. Co. v. Boney, 117 Ind. 501 [20 N. E. Rep. 432, 433; 3 L. R. A. 435], it is said:

"The act of consolidation involves an implied assumption by the new company of all the valid debts and liabilities of the consolidating companies."

In Berry v. Railway Co. 52 Kan. 774 [36 Pac. Rep. 724; 39 Am. St. Rep. 381], it is said:

"The debts of the original companies follow as an incident of the consolidation, and become by implication in the absence of express provision, the obligations of the new company."

In Day v. Railway Co. 151 Mass. 302, 308 [23 N. E. Rep. 824], it is said:

"The new corporation is a new person, for the acquisition of new rights, or the making of new contracts, (but) the old corporations shall not be altogether ended, but shall continue under the new name, so far as to preserve all their existing obligations unchanged."

We hold in line with these cases that the liability of plaintiff in error is precisely the same as though it were the National Mutual. The determination of the amount for which the National Mutual would be liable if sued by plaintiff below is the remaining question in the case.

When the original insurer transferred its assets including its good will to the Omaha of Minneapolis, the former was indebted to plaintiff

Insurance Co. v. Hare.

below in an amount equal to the aggregate of the premiums paid to it by Hare on account of his policy. The solvency of the original insurer at that time must be presumed. The power of the Omaha of Minneapolis to acquire said assets and good will must also be presumed and its power to pay for that which it had the right to purchase cannot be denied.

A part of the purchase price which the purchasing company agreed to pay was the assumption of the claim which Hare then had against the original insurer. Hare consented to the arrangement, and thereby released the original insurer. Hence, at the beginning of its career the Omaha of Minneapolis, by virtue of its contract with its predecessor, became indebted to Hare in an amount equal to the premiums paid to the original insurer. The Omaha of Minneapolis, while in business increased this indebtedness by receiving further premiums from Hare. At the time of the transfer by the latter of the National Mutual, the succeeding company as part of the purchase price, assumed the indebtedness of its predecessor. That amount would be the aggregate of the premiums paid as we have seen. To this arrangement Hare again assented and released the Omaha of Minneapolis. All the remaining premiums were paid the National Mutual. Unless there are some circumstances in the case that require a different result it would seem clear that the amount of recovery to which, as against the National Mutual, plaintiff below would be entitled would be the aggregate of the premiums paid on the policy to all the companies. But one fact requires notice. At the time of the transfer by the Omaha of Minneapolis, to the National Mutual, of all its assets and good will the record shows that the Omaha had no funds " of itself " sufficient to pay its natural death claims alone. It must be assumed that the National Mutual at the time of the transfer to it was solvent.

Whatever the amount of its funds may be the Omaha succeeded in disposing of its business to a solvent purchaser upon a contract that the purchaser would pay all the Omaha's obligations and indebtedness upon its policies. This may be true because of the value of the good will alone. The assumption of Hare's claim by the National Mutual makes it quite unimportant in the case whether the funds on hand were sufficient to pay Hare or not at the time of the transfer. It follows we think that the National Mutual owes Hare the amount of the premiums paid by him on his policies before December 5, 1898, because the National Mutual in and by a contract which it had the right to make, and upon a consideration moving from the Omaha of Minneapolis, agreed to pay the claim and upon a further consideration moving from Hare, to wit, the release of the Omaha of Minneapolis, by Hare, further agreed to pay Hare. For the business it has received from Hare since December 5, 1898, the Na-

tional Mutual is liable to him because it received the money upon an invalid contract and the consideration for the payments by Hare has failed. The National Mutual would be liable to Hare for the full amount of all the premiums paid to all the insurance companies, and such was also the liability to him of the plaintiff in error.

If the contract of insurance was valid and its repudiation by defendant below was wrongful, the right to recover and the amount of recovery would be the same. Insurance Co. v. Tullidge, 39 Ohio St. 240.

It is manifest that the failure of plaintiff below to make further payments of insurance upon an insurance contract which was void from the beginning could in no view result in any forfeiture of his right to recover the premium already paid.

Upon the whole case this court, by a majority of the judges, holds that the judgment of the common pleas is the only judgment which under the law should be rendered in the case.

Judgment accordingly.

**Norris, J.,** concurs.

**Day, J.,** dissents, and for errors in the record, in the admission of evidence and in the charge would reverse the judgment.