WELLES v. CHICAGO & N. W. RY. CO.

(Circuit Court, E. D. New York. June 25, 1908.)

RAILROADS—BONDS GIVING OPTION TO EXCHANGE FOR STOCK—RIGHTS OF HOLDER AGAINST SUCCESSOR OF COMPANY.

Defendant railroad company purchased all of the stock of a second company, exchanging its own therefor, and thereafter the second company conveyed to it all of its property, in part consideration for which defendant assumed all of the grantor's debts and obligations. Previous to such sale and conveyance, the selling company, by action of its board of directors, had issued a series of convertible debenture bonds, running for 20 years, and containing a provision giving the holder of any such bond the option to exchange the same at par for common stock of the company within 10 days after the declaration of any dividend on such stock. No provision, however, was made for the issuance of stock for the purpose of such exchanges. After the sale and conveyance of its property, no meetings of either directors or stockholders were held, and no dividends were declared; the earnings of the property being paid into the treasury of defendant, which operated the same as a part of its system. Twelve years after such transfer, complainant, who was the owner of certain of such convertible bonds not then matured, commenced suit in equity against defendant to compel it to exchange stock therefor, or to account for the value of such stock, on the ground that it had inequitably and unjustly prevented the issuing company from fulfilling its contract in that regard. *Held*, that it having been determined in an action at law that the purchase of the stock and property by defendant and its action thereafter were lawful under the laws of the states in which the selling company was incorporated, and that it was under no legal obligation to maintain itself in a position to permit a bondholder to exercise such option, its exercise of its legal rights gave rise to no equity in favor of complainant inconsistent therewith.

Baldwin & Baldwin (William Woodward Baldwin, of counsel), for complainant.

MacFarlane, Whitney & Monroe and William S. Kies (Edward B. Whitney and Lloyd W. Bowers, of counsel), for defendant.

CHATFIELD, District Judge. The complainant is a resident of the county of Suffolk, in the state of New York, and brought this action in the Supreme Court of New York for that county. It has been removed into the United States court by the defendant, and must now proceed as a case in equity herein.

The action arose from a certain clause, of which the language is as follows:

"Said railway company agrees to transfer to the bearer, at his option, ten shares of one hundred dollars each, of its common capital stock, at any time within ten days after the date fixed for the payment of any dividend upon its common stock, upon delivery to it in the city of New York of this bond and all unmatured coupons thereon in exchange for said stock, and thereupon this bond shall be canceled"

—contained in some seven bonds of the Milwaukee, Lake Shore & Western Railway Company, a corporation operating a railway in the states of Wisconsin and Michigan at the time of the issuance of the bonds.

These seven bonds were purchased by the father and testator of the complainant, and came into the possession of the complainant as a part of the legacy to him, under the terms of his father's will, some time prior to the commencement of this action. Because of this fact, argument has been had as to whether the complainant was a purchaser for value; but this is aside from the real issue of the case, inasmuch as the complainant takes the position that his father, if living, would have as substantial rights as he has, and no grounds of estoppel are set forth because of which there seems to be any reason for consider- ing that the complainant is not in as entirely as good position as his father would have been if living and now bringing the present action.

The action was commenced in the month of August, 1905. The original issue of bonds, of which the ones in question are a part, were dated February 1, 1887, and were to run for the term of 20 years, with interest at 5 per cent. per annum; this interest being payable semian- nually at the office of the company in the city of New York. The suit was therefore started prior to the date upon which the obligation of the bonds became due and within the 20 years described in the bonds. It may be noted, at this time, that one of the questions, other than that of laches, is whether the "conversion clause" above quoted was valid for the period of 20 years, if valid at all, or whether it was limited by a 10-year statute of the state of Michigan, which statute will be referred to later.

The company issuing the original bonds was organized December 11, 1875, under the laws of the state of Wisconsin, by certain parties who had acquired the property and franchises of two other Wisconsin corporations. On February 13, 1883, the Vieux Desert & Lake Super- ior Railway Company, a corporation of the state of Michigan, which was organized September 28, 1881, and which operated a line within the state of Michigan, was consolidated with the Milwaukee, Lake Shore & Western Railway Company, under authority of the laws of both Wis- consin and Michigan, and the name of the associated company was to remain the Milwaukee, Lake Shore & Western Railway Company.

At various times from December 15, 1886, the directors of the com- pany as consolidated authorized the preparation and the issuance of bonds to raise money for certain purposes, namely, the construction of an ore dock and the purchase of additional stock, building, tracks, etc. At a meeting upon the 13th of January, 1887, the form of the

debentures for those purposes was approved, and part of the issue were called, in the resolution, the "Milwaukee, Lake Shore & Western Railway Company, five per cent. twenty-year debentures of 1907." The bond, approved as to form, included as part of the title the word "convertible," and also contained the "conversion clause" above quoted. The directors, also, by resolution, directed its officers to execute the bonds, and authorized the sale by the treasurer of any part of these bonds at 95 and interest. At various meetings of the board of directors subsequent to that time, further bonds were authorized, and their execution directed, and the treasurer was at different times authorized to sell the bonds issued at different prices until on the 29th of January, 1889, the directors authorized the execution and delivery to the Central Trust Company of New York, as trustee, of a mortgage to secure an issue of $5,000,000 worth of bonds, to be known as the "issue of February 1, 1889," and a portion of which were to be security for the 2,000 bonds of $1,000 each, known as the "convertible debentures of 1907," above recited. The mortgage was to and did provide "that the property mortgaged is to be held in trust for the holders of the bonds issued thereunder," and also the holders "of the said two thousand of the debenture bonds or any of them and the coupons attached thereto, equally pro rata and without preference or priority of one over another."

Provision was made for the exchange of these new sinking fund bonds for the "convertible debentures of 1907," and at various times reports were made to the annual stockholders' meetings as to the amount of these exchanges. These exchanges, between the dates of April 13, 1889, and May 9, 1894, amounted to 1,564 of the total issue of 2,000 "convertible bonds." But the bonds purchased by the complainant's testator, and with reference to which this suit is brought, seem never to have been exchanged for the sinking fund mortgage bonds of February 1, 1889, and were purchased as follows: No. 1,282, January 17, 1888, from S. S. Sands & Co., at 90 per cent. and accrued interest; Nos. 1,457, 1,458, and 1,459, purchased February 27, 1889, from Clark, Dodge & Co., at 99 per cent.; and Nos. 1,630, 1,631, and 1,632 were bought January 10, 1890, from Clark, Dodge & Co., at 102. The reports made to the stockholders' meetings were accepted and ordered on file; but no resolution was ever introduced, and no action taken by any of the stockholders, looking toward an authorization of the original bonds nor of any issue of capital stock, for the express purpose of exchange, under the conversion clause of the bonds called the "convertible debentures of 1907."

The capital stock of the consolidated company consisted of 50,000 shares of preferred stock at $100 par value each, and 50,000 shares of common stock at $100 par value each, and in June, 1892, the stock outstanding seems to have been the entire amount of 50,000 shares preferred, and 26,500 shares of common. This issue of outstanding stock was purchased by the defendant company herein, the Northwestern Railway Company, during the first six months of the year 1892, and this purchase was accomplished by the exchange of four shares of the common stock of the defendant company for five shares

of the stock of the Lake Shore Railway Company. There is also testimony that the reasonable value of the defendant's common stock at the time of the exchange was $118.75 a share. This exchange of stock was followed up by a deed executed on behalf of the Lake Shore Railway Company, to the Northwestern Railway Company, conveying all the money, stocks, bonds, and property of every description, and all the franchises, effects, and property whatsoever of the said Lake Shore Railway Company, which deed was executed and delivered and possession completed in the month of August, 1893, since which time the Northwestern Railway Company, as it admits in its answer, has been in possession of "the railroad, railway property and franchises, and other property of said Lake Shore Railway Company, conveyed as aforesaid." The consideration set forth for this conveyance was as follows:

"One hundred dollars to it paid by said party of the second part [the defendant company], the receipt of which is hereby acknowledged, and the assumption by the party of the second part of all the existing debts, liabilities, and obligations of said party of the first part and other good and valuable consideration."

The last dividend upon the common stock of the Lake Shore Railway Company, payable February 16, 1891, and amounting to 7 per cent., was declared upon the 13th of January, 1891, out of the profits of the year 1890. The last dividend upon the preferred stock was declared November 15, 1892, payable February 15, 1893, out of the earnings of the company during the year ending December 31, 1892. Since that time the profits, if any, and the gross income of the entire property have gone into the treasury of the Northwestern Railway Company, and this company has declared annual dividends of 6 per cent. or more upon all its outstanding common stock since the year 1894. The last election of directors of the Lake Shore Railway Company was held in 1893, and the articles of association of that company contain the following provision, which is in accordance with the laws of Wisconsin:

"No person shall be a director of said company unless he shall be a stockholder therein owning stock absolutely in his own name or as trustee or personal representative and qualified to vote at the election at which he shall be chosen, and if it any time any director shall cease to be a stockholder as above provided, he shall be disqualified from being such a director and his office shall be from thenceforth vacant."

The last meeting of the stockholders of this company at which any business was transacted was held upon the 2d day of June, 1893, and the last meeting of which any record is furnished was held upon the 17th of August, 1893, at which no stockholders were present, and the secretary made an entry that no meeting was held.

The last election of officers of the Lake Shore Railway Company was had prior to that date, and the secretary, who before that time had authority to issue the stock, was Mr. Alfred L. Cary, of Milwaukee, who upon February 13, 1905, in answer to an inquiry by the complainant in this action, as to when and where he could exchange "convertible debenture bonds of 1887, of the Lake Shore Railway Com-

pany, for common stock of that company," wrote to the complainant that he could not advise him as to when and where this exchange could be made, inasmuch as in 1893 the company had sold and conveyed its railroad to the Northwestern Company, and by this letter referred the complainant to Mr. E. E. Osborn, vice president and secretary of the Northwestern Railway Company, at 52 Wall street, New York, who subsequently acknowledged the receipt of complainant's letter to Mr. Cary, and stated that, while he could not speak officially or with authority for the Lake Shore Railway Company, he felt justified by the communication from Mr. Cary in saying that an exchange of the debentures of 1887 for the common stock of the Lake Shore Railway Company might not be effected because the debentures had not "been presented for such exchange within the period provided by such debentures." Following the receipt of this letter, and on March 13, 1905, the complainant presented to Mr. Osborn, at the offices of the Northwestern Railway Company, in New York City, the bonds involved in this suit, tendered the same to him, and demanded common stock in exchange therefor, and this tender and demand was refused, and a written statement furnished, which alleged that the refusal was because of the incapacity of Mr. Cary so to do, inasmuch as he "had no such stock and did not represent the Lake Shore Railway Company." The present action was then brought, to which neither the Lake Shore Railway Company, nor Mr. Cary, as secretary thereof, is a party.

The laws of the state of Wisconsin (section 4, c. 119, p. 139, Laws 1872, approved March 22, 1872) provide that the directors of a railway corporation shall continue in office until their successors are elected. But Mr. Cary, as secretary, has performed no official acts since the year 1893, except that on December 26, 1906, he was served with a summons in three actions brought in the Circuit Court of the United States for the Eastern District of Wisconsin, and at that time he told the person so serving him that he was the last secretary elected by the company, and did not know whether he was still secretary or not. The relief asked by the complainant in this action is against the defendant, upon the theory that the defendant has inequitably and unjustly prevented the Lake Shore Railway Company from mantaining a position under which the complainant might exercise his alleged option of converting his bonds into stock, and that the Northwestern Railway Company, as sole stockholder has inequitably and unjustly held no meeting and declared no dividends upon the stock of the Lake Shore Railway Company, although the complainant contends that the property has been profitable, and the earnings have been sufficient (if they had been credited to the Lake Shore Railway Company), to justify the declaration of such dividends, and the complainant prays this court to decree that the defendant corporation shall transfer common stock of the Lake Shore Railway Company in exchange for the seven convertible bonds held by the complainant, or that, if such stock cannot be delivered, the defendant deliver its own common stock on such basis as may be found upon an accounting to be just and equitable, and to account for the profits of the Lake Shore Railway Company, which the complainant alleges should have been

apportioned by the defendant to it as earnings applicable to the declaration and payment of dividends, and that these orders be enforced by the declaration of a trust upon the properties now in the hands of . the defendant, and formerly belonging to the Lake Shore Railway Company, with an injunction preventing their use and disposition until the decree may be complied with.

The defendant sets up, among other allegations, the various transactions referred to in the statement of facts above, and a denial that any of its acts have been contrary to equity, or done to the wrong, injury, or oppression of the complainant, and also claims that the complainant and his testator have been guilty of laches. The defendant also denies that the Lake Shore Railway Company has declared or paid any dividend since February 15, 1893, or that the defendant has received any dividend since that time, and further denies that the Lake Shore Railway Company ever made the agreement to transfer common stock for the bonds in question, but alleges that the bonds were issued by its officers solely under the authority of the board of directors, and for less than 95 per cent. of the par value of each bond.

It appears from the evidence that the defendant has at all times since the 1st of February, 1907, admitted its liability to pay the principal and interest of the bonds in suit, under its agreement to meet the obligations of the Lake Shore Railway Company; but it is contended by the defendant that this is the extent of the defendant's liability to the complainant, and that because of these various matters no suit in equity can be maintained, and, further, that no right of action at law exists except for the face value and the interest of the said bonds.

The evidence in the action has been closed, and the case argued by both sides. Subsequent to the submission of the case, a common-law action, brought by Frederick J. Lisman, David M. Minsesheimer, and William Goodman, as plaintiffs, against the Milwaukee, Lake Shore & Western Railway Company and Chicago & Northwestern Railway Company, as defendants, in the Circuit Court of the United States for the Eastern District of Wisconsin, was tried and decided. This trial was had before Judge Quarles, of that circuit, and an opinion had been filed, holding that the plaintiffs in that suit have no cause of action in tort, and cannot recover, for the reason that the demand for conversion of the bonds into stock was not made within 10 days after the date fixed for the payment of any dividend upon the common stock, and that the Northwestern Railway Company was not bound throughout the whole period of 20 years to maintain itself in a position where shares of the Lake Shore Railway Company common stock could be transferred throughout the entire period. Judge Quarles says in his decision:

"It must be apparent that all hope of speculative venture under the option was extinguished when the stock ceased to represent any value and had been withdrawn from the market; the stock certificates being stored away as a memento of a defunct enterprise."

The court's determination upon this point is based upon a finding that the consolidation of the various companies and the purchase of the property by the Northwestern Railway Company were valid, under the laws of both Wisconsin and Michigan, and it is unnecessary to consider the correctness of this determination, inasmuch as, unless plainly erroneous, the holding of the Circuit Court of Wisconsin upon this question will be followed by this court.

Judge Quarles further shows in his opinion that the measure of damage is not satisfactorily proven, and, in addition, says that, if the complainants had exchanged their bonds for stock of the Lake Shore Railway Company, and now demanded stock of the Northwestern Railway Company, on the basis of four to five for the Lake Shore Railway Company stock supposedly held by them, they would not be entitled to that relief:

"First. Because it appears by the evidence that the proposition so made by the Northwestern Company in 1892 was extended to the stockholders of the Lake Shore Company, and to none others. The holders of convertible bonds were not stockholders. They were creditors. They had neither a legal nor equitable interest in the stock. Pratt v. American Bell Telephone Co., 141 Mass. 225, 230, 5 N. E. 307, 55 Am. Rep. 465. It is well settled that any such proposition can be accepted only by the class of persons to whom it is expressly made. Indianapolis Ry. v. Miller, 71 Ill. 463. Second. The proposal was expressly limited as to time. The proposition in question was communicated through the instrumentality of certain brokers in New York City to the stockholders, and by its terms expressly expired on the 1st day of February, 1892."

The determination of Judge Quarles upon the legal rights of the parties, as has been said, will be followed by this court; but inasmuch as the present action was brought in equity, and although removed into the United States court, inasmuch as the equitable principles applicable in the state court are considered to be applicable in the case as removed, it has been necessary to recite the issues and evidence of the present suit, in order to see whether the determination of the alleged cause of action in the suit at law disposed of the issue in the present case, or whether, on the contrary, the complainant here, notwithstanding the result of the suit at law in Wisconsin, makes out such a willful disregard of complainant's (the bondholder's) rights, and such an inequitable disposition and control of the property and stock of the Lake Shore Railway Company, as will make it necessary for a court of equity to attempt restitution or restoration of the rights which the complainant would have enjoyed if no such action had been had.

The defendant has incidentally objected that necessary parties were not before the court; but the evidence has all been taken, the merits of the proposition are before the court, and a determination can be reached which, inasmuch as the decision must be for the defendant, makes it unnecessary to consider the difficulty of carrying out the decree if a different conclusion had been reached.

In addition, it might be said that this court can see no reason why the Northwestern Railway Company, controlling all of the stock of the Lake Shore Railway Company, being able to exchange its stock

upon whatever basis might be decided, for the stock of the Lake Shore Railway Company, and being in a position to cause to be done everything that might be necessary, is not the only party whose presence would be required, in order to effectuate any relief that might have been ordered, if basis for such relief were believed to exist. The decision of Judge Quarles in the action at law, as has been said, would seem to be conclusive, in so far as it determines that the Northwestern Railway Company had a legal right to do as it has done, and there seems to be no evidence in the case which would indicate a lack of equity in the exercise of the legal rights found by Judge Quarles to exist in the Northwestern Railway Company.

The Massachusetts cases cited by the complainant (John Hancock, etc., Co. v. Worcester, etc., Co., 149 Mass. 212, 21 N. E. 364; Day v. Worcester R. R. Co., 151 Mass. 302, 23 N. E. 824; India Mutual Ins. Co. v. Worcester Ry., 25 N. E. 975), and the various arguments advanced by it to the effect that it is in itself inequitable to so act as to make it impossible for a person to carry out his legal obligations, are disposed of by the determination that these acts have been legal, and need not be discussed at length.

It would seem, in addition, that the action of the directors of the Lake Shore Railway Company, in authorizing the issue of stock in exchange for convertible bonds, which bonds were sold at less than par, was of itself an act that under the laws of the state of Michigan would have been illegal, and under the laws of the state of Wisconsin would have required the action of the stockholders of the corporation. A ratification might estop the stockholders, but would not prevent a reliance upon the fact that such offer was illegal, when considering the action of the Northwestern Railway Company in buying the stock, and in so managing the affairs of the corporation that no dividend was declared, and hence no opportunity given for the making of a demand for what it believed to be an illegal offer to exchange bonds for stock.

On the merits of the contention as to the paragraph for the exchange of stock for bonds itself, it should be said that while it is contended on behalf of the complainant that this provision was inserted for the benefit of the corporation, and while so long as the offer existed the demand might be made at any time, but that no stock could be issued in exchange, except within the period of 10 days provided, nevertheless it is believed that no demand could be made effectual, and no obligation to issue the stock in exchange for the bonds could be relied upon, unless a dividend was declared. A deposit of the stock in anticipation of the declaration of the dividend would not justify the interposition of a court of equity in declaring that a dividend must be made, unless at least it should be shown that the failure to declare a dividend was for the purpose of unjustly depriving the bondholders of the benefits of the demand which they had made. In the present case, no such fraudulent or unjust purpose is shown, and it is believed that in equity, as in law, the Northwestern Railway Company was within its rights in considering that no obligation rested upon it to furnish an opportunity for the making of a demand to exchange stock

for bonds, after its purchase of the stock of the Lake Shore Railway Company.

Reference has been made to a 10-year statute of limitations, which of itself might be an additional reason for considering that the agreement to exchange for a period of 20 years was illegal because of this statute, as well as because of the failure of the stockholders to make the agreement; but, for the reasons already expressed, it is unnecessary to base the decision upon this ground.