### *In re* SEWART ESTATE.

### SEWART *v.* SIMCOKE.

1. WILLS—INTENT.

   The intention of the testatrix governs the distribution of the property subject to the will.

2. SAME—INTENT—DEATH OF LEGATEE PRIOR TO TESTATRIX.

   What is the intention of the testatrix is the controlling issue, where her will provided that in the event a legatee predeceased testatrix the legacy should pass to the legatee designees, if testate, and, if legatee be intestate, to the legatee's heirs-at-law "in accordance with the laws of intestacy in force at the time of" the death of testatrix.

3. SAME—CONSTRUCTION IN CASE LEGATEE PREDECEASES TESTATRIX— CONTROLLING ISSUE.

   The controlling issue on appeal from an order of the probate court making a construction of a provision of a will setting forth the disposition of a legacy to a legatee in case the legatee predeceased the testatrix is the rights of claimants to the legacy to the legatee who predeceased testatrix under the latter's will and not to make a determination of the right of a party or parties to receive intestate property from the estate of the legatee in accordance with the law of the State of domicile of the legatee.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 57 Am Jur, Wills § 1133.
[2] See, generally, 57 Am Jur, Wills § 1133 *et seq.*
[3, 4] 57 Am Jur, Wills § 1455.
[5] 57 Am Jur, Wills § 1136.
[6, 7] 57 Am Jur, Wills § 1162.
[8] 11 Am Jur, Conflict of Laws § 174.
[9] 11 Am Jur, Conflict of Laws § 175.
[10] 39 Am Jur, New Trial § 112.

4. SAME—STATUTES OF DESCENT AND DISTRIBUTION—LEGATEE WHO PREDECEASED TESTATRIX.

Testatrix who provided that in the event her legatee should predecease testatrix the legacy should go to the legatee's designees, or if no designation were made, to pass "in accordance with the laws of intestacy in force at the time of my death" indicated that testatrix had in mind statutes governing the descent and distribution of any property of which she might be seised and possessed at the time of her death of which she had not made disposition by will and justified conclusion she had in mind the statutes of her domicile.

5. SAME—DETERMINATION OF INTENT.

The intention of the testatrix must be determined, if, possible, from the language of the will.

6. SAME—PRESUMPTIONS—STATUTES.

The maker of a will is presumably familiar with the laws of his own State and ordinarily without specific information as to the statutes in force in other States relative to the descent and distribution of intestate property.

7. SAME—CONSTRUCTION—PRESUMPTIONS—STATUTES.

A court, when construing a will, may not ignore the testator's presumed familiarity with the laws of the State of his domicile relative to the descent and distribution of intestate property.

8. SAME—CONSTRUCTION—STATUTES.

A will is construed in accordance with the laws of the State of the domicile of the testatrix, where made at her place of domicile, unless there is something in the language which repels or controls such conclusion.

9. SAME—CONSTRUCTION OF "HEIRS-AT-LAW" OF INTESTATE LEGATEE.

The term "heirs-at-law," used in will of testatrix with reference to disposition of the legacy to an intestate legatee who predeceased testatrix, is construed according to the laws of this State where testatrix had been domiciled for many years.

10. SAME—CONSTRUCTION OF WILL—EXCLUDED TESTIMONY—NEW TRIAL.

A new trial is not granted in suit to construe a will containing a provision as to disposition of legacy to an intestate legatee who predeceased testatrix and claimed to be ambiguous in that testatrix failed to indicate whether the heirs-at-law of the legatee were to be determined by the laws of the domicile of the legatee or testatrix and trial court declined testimony as to 2 prior wills and claimed preferences and dislikes as to

some of the legatee's relatives who would take in case construction were to be in accordance with statutes of the domicile of testatrix, where the offered proofs, if received and considered, could not change the result.

Appeal from St. Clair; Kane (Edward T.), J. Submitted January 6, 1955. (Docket No. 26, Calendar No. 46,215.) Decided June 6, 1955.

Dora Lamont, a legatee under the will of Blanche A. Sewart, predeceased the testatrix. The Commercial & Savings Bank of St. Clair, executor of the estate of Blanche A. Sewart, petitioned for determination of heirs of deceased legatee. B. F. Simcoke, administrator of the estate of Ernest Lamont, legatee's deceased husband, claimed legacy to the exclusion of Marjorie Sewart, George Sewart, Margaret Sewart Mosure, Wilbur Sewart and Mabel Sewart, legatee's nephews and nieces. Order of probate court and judgment of circuit court so determined, and nieces and nephews appeal. Cross appeal filed. Reversed and remanded.

*Covington, Davidson & Osborn,* for appellants.

*Bush & Bradt,* for appellee.

Carr, C. J. This case involves the construction of provisions of the will of Blanche A. Sewart who died September 3, 1950. At the time of her death, and for many years prior thereto, Mrs. Sewart was a resident of St. Clair county, Michigan. The will in question was executed August 4, 1949. Her husband had previously passed away, and she left no descendants.

Among other provisions, the will, in the fourth paragraph thereof, set forth 11 legacies, all but 1 being to relatives of testatrix or of her deceased hus-

band. After listing the beneficiaries and the amount payable to each, testatrix inserted the following provision:

"If any of the above named persons, including the survivor of Anthony Burkot and Margaret Burkot, shall predecease me, the legacy herein provided for such person shall be distributed to such person or persons as by the duly probated will of said deceased person shall be designated to take such legacy, or if no such designation be made then to the person or persons designated to take the residue of the estate of such deceased person, and in case such deceased person shall have died intestate, the aforesaid legacy shall be distributed to the heirs-at-law of such deceased person in accordance with the laws of intestacy in force at the time of my death."

By the eighth paragraph of the will testatrix devised and bequeathed any and all property, not otherwise disposed of, to the legatees mentioned in the fourth paragraph, said legatees to take proportionately. All of the beneficiaries under the fourth and eighth paragraphs were living at the time of the death of Mrs. Sewart with the exception of Dora Lamont, who was described by testatrix in the will as the sister of her late husband, and who was given a legacy of $4,000 in addition to what she might receive under the residuary clause. Mrs. Lamont died intestate several months prior to the death of Mrs. Sewart. She had for many years been domiciled in the State of Florida. She had no descendants living at her death but was survived by her husband. She also left several nieces and nephews who are the appellants in the instant case.

The question at issue is whether the language above quoted from the will of Mrs. Sewart is to be construed as evidencing an intention that the person or persons entitled to receive the legacies given to Mrs. Lamont, in the event of her death prior to that

of testatrix, should be determined by reference to the statutes of Florida, the legatee's domicile, or in accordance with the statutes of Michigan pertaining to the distribution of intestate property. It is conceded that if the term "heirs-at-law" was intended to be construed in accordance with the Florida statute* the husband of the legatee was entitled to the proceeds of the legacies. On the other hand, if Mrs. Sewart intended a construction in accordance with the Michigan statute† the husband took one half of said legacies and the nephews and nieces of Mrs. Lamont the remaining one half. That the intention of testatrix governs is not open to question. Obviously the person or persons entitled to receive the legacies do so by virtue of Mrs. Sewart's will. Her intention is the controlling issue.

Ernest Lamont, the husband of Dora Lamont, died subsequently to the death of testatrix. His estate is represented in the instant proceeding by an administrator duly appointed by the Florida court in probate proceedings. The question as to the extent of the interest of said estate and the interests, if any, of the nephews and nieces of Mrs. Lamont was presented to the probate court of St. Clair county by the executor under the will of Mrs. Sewart in a petition seeking the approval of its final account and a determination as to the disposition of the Lamont legacies. An order was entered by the judge of probate in favor of the administrator. On appeal to the circuit court such order was affirmed. The nephews and nieces of Mrs. Lamont have appealed, asserting that the judgment of the circuit court was erroneous.

---

* See Florida Statutes (1953) and Florida Stat Ann § 731.23.

† See CL 1948, § 702.93, as amended by PA 1949, No 78 (Stat Ann 1949 Cum Supp § 27.3178 [163]). Amendments subsequent to the death of testatrix are not material in this case.

On behalf of appellants it is argued that the testatrix may be presumed to have been familiar with the statutes of Michigan relating to the descent and distribution of intestate property, that there is nothing to indicate knowledge on her part with reference to like statutes in force in other States, and that the language of her will, above quoted, may not properly be construed as indicating that she intended that the "heirs-at-law" of any legatee who predeceased her should be determined other than by reference to the statutes of Michigan. On behalf of appellee it is contended that testatrix must be assumed to have known, and to have had in mind, that the determination as to the party or parties entitled to receive intestate property *from the estate* of any legatee would be made in accordance with the law of the State of domicile of such legatee at the time of death. It must be borne in mind, however, that we are not here concerned with the right of any person or persons to take property, either real or personal, which Mrs. Lamont owned. Rather, the matter at issue is the rights of the parties to this proceeding to claim the legacies to Mrs. Lamont under the will of testatrix.

It will be noted that Mrs. Sewart made no reference to the statutes of Florida, although it may be assumed that she was aware when she made her will that Mrs. Lamont was living in that State. Furthermore, had it been the intention of testatrix to give to the term "heirs-at-law" the meaning claimed by appellee, she doubtless would have referred to the laws of intestacy in force at the time of the death of any legatee designated in the fourth and eighth paragraphs of her will. This she did not do. Instead of such reference she stated specifically that the distribution of legacies given to a beneficiary predeceasing her, and failing to make designation by will, in the manner indicated by Mrs.

Sewart, of a person or persons who should take such legacies, should be made "in accordance with the laws of intestacy in force at the time of my death." This phrase is significant. It indicates that Mrs. Sewart had in mind the statutes that would govern the descent and distribution of any property of which she might be seised and possessed at the time of her death and which she did not dispose of by will. The conclusion is, we think, fully justified from the language of the will that Mrs. Sewart had in mind the statutes of Michigan.

As before noted, the basic question in construing the will is the intention of the testatrix. Such intention is to be determined, if possible, from the language of the instrument. In the instant case we find that such language is reasonably clear and explicit. In passing on controversies of this nature courts have repeatedly recognized that the maker of the will was presumably familiar with the laws of his own State and ordinarily without specific information as to statutes in force in other States. Such situation may not be ignored in the construction of the language of a will.

In *Lincoln* v. *Perry,* 149 Mass 368 (21 NE 671, 4 LRA 215), a will executed and probated in Massachusetts gave a life interest to a resident of New Hampshire and at her decease "to her heirs-at-law and their heirs and assigns forever." The question arose whether the term "heirs-at-law" should be construed with reference to the laws of Massachusetts or according to the laws of New Hampshire. In determining that the testator presumably had in mind the statutes of his own State, it was said in part (pp 273, 274):

"It has been argued, that the term 'heirs-at-law' should be held to mean those who would be the actual heirs of Judith upon her decease, this being deter-

mined by the place of her residence; and that therefore the determination who should take as her heirs should be made according to the laws of New Hampshire. But the question after all is, What is the meaning of the testator's words? and we are brought to the conclusion that the true meaning is, to designate a set of persons who were to take the estate upon Judith's death, and that those persons are styled her heirs-at-law. This set of persons would not fluctuate with any changes of residence that she might make. The testator would probably not be familiar with the laws of different States. He lived here, his will was drawn here by a Massachusetts lawyer, and it was executed here. The laws of Massachusetts are those with which presumably he would be best acquainted. The fact that he formerly lived in New Hampshire is immaterial. It is not disclosed how long he had lived in Massachusetts, nor is it necessary to go into an inquiry upon that subject. Under the circumstances stated, we must read his will as the will of a person settled and established in Massachusetts. In speaking of heirs-at-law, he probably meant those who would be heirs-at-law here."

This decision has been cited with approval in later Massachusetts cases.

In *Radford* v. *Fidelity & Columbia Trust Company,* 185 Ky 453 (215 SW 285), there was involved the construction of a will made in Indiana by a married woman domiciled there at the time of the making of said will and likewise at the time of her death. Probate proceedings were had in Indiana. In commenting on the situation, it was said (pp 458, 459):

"It is contended, by appellants, that in ascertaining the intentions and meaning of the testatrix, as expressed in the instrument, and in construing it, in order to determine the rights of the parties under the will, we must be guided by the laws upon those subjects, which prevailed in the State of Indiana, at

the time of the execution of the will. This contention seems to be sound, as in accordance with the general rule of interpreting and ascertaining the meaning and intentions of a testator, as expressed in his will, reference must be had to the law of his domicile, at the time, the will was executed, and such law will govern, unless it appears, from the will, that the testator had in mind and made his will with reference to the law prevailing in some other country or jurisdiction. By the same rule, if the property, in controversy, is personal property, the rights of the parties under the will are determined by the laws prevailing in the jurisdiction of the testator's domicile, at the time of his death. (Citing cases.) There is nothing in the will of the testatrix to indicate, that in making her will, she had in contemplation, the laws prevailing in Kentucky."

In *Houghton* v. *Hughes,* 108 Me 233 (79 A 909, Ann Cas 1913A, 1287), the court quoted with approval from *Lincoln* v. *Perry, supra,* holding (pp 235, 236) that as a general rule "a will is to be interpreted according to the laws of the country or State of the domicile of the testator, since he is supposed to have been conversant with those laws." The court also quoted with approval from *Harrison* v. *Nixon,* 9 Pet (34 US) 483 (9 L ed 201), in which Justice Story, in discussing the meaning of the words "heir-at-law," said (pp 503, 504):

" 'The language of wills is not of universal interpretation, having the same precise import in all countries and under all circumstances. They are supposed to speak the sense of the testator according to the received laws or usages of the country where he is domiciled, by a sort of tacit reference, unless there is something in the language which repels or controls such a conclusion.' "

A decision of the supreme court of Kansas in *Keith* v. *Eaton,* 58 Kan 732 (51 P 271), is also in

point. There the court was concerned with the construction of a will executed in Missouri by a testator domiciled there, leaving a life estate in lands in Kansas to his son with remainder to the "heirs of his body." The question arose whether an illegitimate child of the son could take under the will. Under the law of Kansas he was an heir of his father, but not so under the statutes of Missouri in force and effect at the time of the execution of the will and of the death of the testator. In holding that the will must be construed in accordance with the law of the domicile of the testator, it was said (pp 735, 736):

"In the absence of a contrary meaning, to be gathered from the circumstances surrounding a testator or from the instrument as a whole, the sense of the words used by him is to be ascertained in the light of the law of his domicile. Presumptively, he is more familiar with that law than with the law of other jurisdictions. That is the law which is constantly with him, controlling his actions and defining his rights, and more naturally than any other law would be present to his mind in the drafting of an instrument dispository of his property.

"Greenleaf, in his work on Evidence (Vol 2, 16th ed, § 671, pp 615, 616), says:

" 'In the interpretation of wills, whether of movable or immovable property, where the object is merely to ascertain the meaning and intent of the testator, if the will is made at the place of his domicile, the general rule of common law is that it is to be interpreted by the law of that place at the time when the will was made. Thus, for example, if the question be, whether the terms of a foreign will include the "real estate" of the testator, or what he intended to give under those words; or whether he intended that the legatee would take an estate in fee or for life only; or who are the proper persons to take under the words "heirs-at-law" or other *designatio per-*

*sonarum,* recourse is to be had to the law of the place where the will was made and the testator domiciled.'

"To the same effect are Story on Conflict of Laws (8th ed), § 479h, p 671; 3 Am & Eng Encyc of Law, pp 637–641; *Guerard* v. *Guerard,* 73 Ga 506; *Ford* v. *Ford,* 70 Wis 19 (33 NW 188, 5 Am St Rep 117); *Lincoln* v. *Perry,* 149 Mass 368 (21 NE 671, 4 LRA 215)."

Of like import is *Rose* v. *Rambo,* 120 Miss 305 (82 S 149).

While the factual situations involved in the cases cited are not identical with that presented in the case at bar, we think the general principle recognized is applicable here. It may be assumed that Mrs. Sewart, having been a resident of Michigan for many years, was familiar with the laws of this State. There is nothing to indicate that she was advised with reference to the statutes of other States in which her beneficiaries might be living at the time she made her will. There is nothing in the instrument tending in any way to contradict the inference that in using the expression "heirs-at-law" she had in mind the Michigan statutes. Furthermore, the express reference to the laws of intestacy in force at the time of her own death suggests that she had in mind the Michigan statutes rather than those of any other State or States. The rule of interpretation recognized in the decisions above cited is in accord with the great weight of authority and is consistent with the holding of this Court in *Ford* v. *Ford,* 80 Mich 42. We conclude that the trial court was in error in entering judgment on the theory that testatrix intended "heirs-at-law," as used by her in the provision of her will hereinbefore quoted, to be construed with reference to the statutes of Florida, insofar as the Lamont legacies were concerned.

On the trial of the case in circuit court counsel representing the administrator of the estate of Ernest

Lamont offered in evidence a copy of a will made by Mrs. Sewart in 1945, and also a copy of a will made by her husband at the same time. In making the offer counsel read a provision from the prior will of Mrs. Sewart to the effect that if she deceased or became mentally incapacitated within a period of 90 days following the death of her husband it was her direction that one-half of her estate should go to her legal heirs-at-law in accordance with the Michigan laws of descent and distribution of estates of persons dying intestate, and the other half to the legal heirs of her husband in accordance with said laws. It is claimed that the will of Mr. Sewart contained a like provision. On objection the exhibits were excluded.

Counsel also offered to prove by the oral testimony of a witness that while Mrs. Sewart was quite fond of one of the nieces and one of the nephews of Mrs. Lamont, said persons being appellants here, she did not like the other nephew and was not acquainted with appellant Margaret Sewart Mosure or with Mabel Sewart. This offer apparently rested on the theory that it tended to show that Mrs. Sewart wanted the legacies to go, in the event that Mrs. Lamont predeceased her and made no designation by will as to the recipient or recipients, to Ernest Lamont rather than to the blood relatives of Mrs. Lamont and Mr. Sewart. This testimony was also excluded, on objection.

Claiming that these rulings of the trial court in excluding the proofs offered were erroneous, the administrator of Mr. Lamont's estate filed a cross appeal and now asks that, if the judgment entered in the circuit court is reversed, the cause be sent back to that court for a new trial on the theory that the refusal to receive the proofs in question was erroneous and sufficiently prejudicial to require a retrial of the controversy.

We think there is much force in the argument of appellants that the will of Mrs. Sewart fairly indicated her intention with reference to the matter in controversy here. However, if we assume that the provisions in question are ambiguous, the question arises as to the materiality of the evidence sought to be introduced by cross-appellant. Insofar as the prior wills of Mr. and Mrs. Sewart are concerned, the offer was based on the theory that the will in question here was ambiguous, that, in consequence, testimony of facts tending to show the situation existing at the time it was executed was competent as bearing on the intention of testatrix, and that the fact that the reference to the Michigan statutes was contained in the prior will and omitted from the later one indicated that testatrix did not intend, in referring to taking by the heirs-at-law of a legatee predeceasing testatrix, that the determination of such heirs-at-law should be made in accordance with the Michigan statute. We cannot agree, however, that such an inference follows. We think that if Mrs. Sewart had intended that the determination of the heirs of predeceased legatees should be made in any instance in accordance with the statutes of some State other than Michigan she would have expressed such intent in appropriate language. The fact that she omitted any reference to the Michigan statutes in specific terms is consistent with the theory that she concluded, or perhaps was advised by her attorney, that such reference was not necessary, particularly in view of the statement indicating that the laws of intestacy in force at the time of her death should control.

The offered testimony as to Mrs. Sewart's attitude towards the nieces and nephews of her deceased husband is subject to similar comment. The fact that she had not personally met 2 of the nieces, and perhaps disliked 1 of the nephews, is offset, as a matter

of argument, by her conceded fondness for 1 niece and her liking for 1 of the nephews. It must be borne in mind that these nephews and nieces were blood relatives of Mr. Sewart, and the terms of the will clearly indicate that in making disposition of her property testatrix wished to make provision for her deceased husband's relatives as well as her own.

Had the evidence excluded by the trial court been received, it would have been insufficient to overcome the proofs as to Mrs. Sewart's actual intention, supplied by the language of the instrument, the general purposes evidenced thereby, and the failure to indicate in any way that testatrix had in mind the statutes of descent and distribution other than those of Michigan that might be in force and effect at the time of her own death. The offered proofs, if received and considered, could not be given the effect of changing the result. We find no prejudicial error requiring the granting of a new trial.

The judgment of the trial court is reversed, and the cause is remanded with directions that it be returned to the probate court for further proceedings in accordance with this opinion and for the determination of such other questions as may be involved. Appellants may have costs.

BUTZEL, SHARPE, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.

SMITH, J., took no part in the decision of this case.